UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DENNIS McLEAN,                                    :

                 Petitioner,                      :         06 Civ. 0807 (AJP)

          -against-                          :         **OPINION AND ORDER**

JAMES CONWAY,                                    :

                  Respondent.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

          Pro se petitioner Dennis McLean seeks a writ of habeas corpus from three convictions in Supreme Court, New York County: (1) his October 8, 1996 conviction after a jury trial for the February 26, 1996 burglary of Janoff's Stationery Store, and sentence as a mandatory persistent violent felony offender to twenty-five years to life imprisonment; (2) his July 8, 1997 conviction after a guilty plea for the January 16, 1996 robbery of his niece Ebony McCoy, and sentence of an aggregate of twenty years to life to run concurrent to the sentence on the October 8, 1996 conviction; and (3) his April 6, 1998 conviction after a guilty plea for the January 17, 1996 robbery of Vinnie Kakkar, and sentence of twenty-five years to life to run concurrent to the sentences imposed under the two prior judgments. (Dkt. No. 5: Am. Pet. ¶¶ 1-6.) See People v. McLean, 309 A.D.2d 639, 639, 765 N.Y.S.2d 626, 626 (1st Dep't 2003).

          McLean's amended habeas petition raises the following claims: (1) he "was deprived of his Due Process right to a fair trial under Indictment Number 1599/96" (i.e., his October 8, 1996

conviction) because (a) the prosecutor's repeated references to his statement that he would not "go 'back' to jail" were improper particularly when "juxtaposed to [the prosecutor's] attestations that the police officers in this case were honest and credible witnesses as well as superhuman protectors of our neighborhoods"; and (b) the trial court "infringed on the defense's right to make an effective summation" by instructing the jury during defense counsel's summation on the lawful duty of police officers, after defense counsel had argued that the police had no lawful duty to arrest McLean, thereby "both t[aking] an element from the jury and reinforc[ing] the prosecutor's suggestion that [McLean] was a dangerous individual with a criminal propensity" (Am. Pet. ¶ 12(a)); (2) Theodore Quintana's lineup identification of McLean should have been suppressed (id. ¶ 12(b)); (3) McLean's two guilty pleas should be vacated because they were "improperly induced by the courts' explicit threats that if [McLean] insisted on going to trial and was convicted, [the court] would run the sentences consecutively to the 25 years to life sentences he was already serving" (id. ¶ 12(c)); (4) he "was deprived of his Due Process right to undelayed arraignment . . . for the purpose of depriving [McLean] of his right to counsel and [McLean's] right to testify before the grand jury" and thus his "inculpatory statements, and confessions should have been suppressed and the indictment should [have] been dismissed" (id. ¶ 12(d)(I)); (5) his written confession and the lineup identification should have been suppressed because both were conducted without counsel even though his right to counsel had attached (id. ¶ 12(d)(II)); and (6) ineffective assistance of trial counsel (id. ¶ 12(d)(III)).

The parties have consented to decision of McLean's petition by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 17.)

For the reasons set forth below, McLean's petition is DENIED and a certificate of appealability is not issued.

## FACTS

### The Indictments

Indictment No. 1599/96 was filed on March 8, 1996, charging McLean with the February 26, 1996 burglary of Janoff's Stationery Store. (Dkt. No. 8: Chaffee Aff. Ex. A: Ind. No. 1599/96.)

On the same day, Indictment No. 1620/96 was filed, charging McLean in the first three counts with the January 16, 1996 robbery of his niece, Ebony McCoy; the fourth through sixth counts charged McLean with the January 17, 1996 robbery of Vinnie Kakkar; and counts seven through nine charged McLean with the February 14, 1996 robbery of Theodoro Quintana. (Chaffee Ex. B: Ind. No. 1620/96.)

### Indictment Number 1599/96: Robbery at Janoff's Stationery Store

#### The Prosecution Case at Trial

On February 26, 1996 at approximately 6:30 p.m., Andrew Tun was working in Janoff's Stationery Store on Broadway between 111th and 112th Streets when he heard movement in the employees-only office. (Dkt. Nos. 15 & 16: Tun: Trial Transcript ["Tr."] 312, 313, 317.)[1] The office is located above the back of the store and is accessible by a small, steep staircase. (Tun: Tr. 315, 317; Surjadi: Tr. 418-21; Sdrougias: Tr. 539-42; Ma: Tr. 788.) A sign, "Private, No Entry,"

---

[1] The trial transcript was filed with the Court in two volumes, the first containing pages 1-492 (Dkt. No. 15) and the second containing the remaining pages 493-1066 (Dkt. No. 16).

was posted next to the stairway. (Tun: Tr. 316, 350-51, 370, 380; Surjadi: Tr. 417, 423, 476-77, 485-86; Sdrougias: Tr. 539; Nicholson: Tr. 587.) The office contains employee files, the store's cash, and the store's safe which holds cancelled checks and invoices. (Tun: Tr. 315-16; Ma: Tr. 788, 790-92.)

When Tun went up to the office to check, he found McLean standing by a table in the office. (Tun: Tr. 317-21.) McLean was sweating and appeared nervous. (Tun: Tr. 320.) Tun told McLean that he was not supposed to be in the office; McLean responded that he was not stealing anything, he was a "working person" and he was looking for someone. (Tun: Tr. 320-21, 324, 387.) Tun noticed that the cabinet door where the safe was kept was open. (Tun: Tr. 322, 354-55, 372-73.) Tun called out to another employee, Oscar Surjadi, who was downstairs, and in a nervous voice told him that there was a stranger in the office. (Tun: Tr. 324; Surjadi: Tr. 411-15, 446, 475.) Surjadi got nervous, thought it might be a robbery, and called 911. (Surjadi: Tr. 415, 425-26, 446, 474.) Tun and McLean went downstairs. (Tun: Tr. 324; Surjadi: Tr. 427.) Surjadi told McLean that he could not leave, but rather had to wait for the police. (Tun: Tr. 324; Surjadi: Tr. 428-29.)[2] McLean repeated that he had only been looking for someone and tried to get past Surjadi to leave. (Tun: Tr. 324; Surjadi: Tr. 429-31; Nicholson: Tr. 555.)

---

[2]  On cross-examination, Tun testified that when he and McLean walked downstairs together, Tun had intended to allow McLean to leave since he had not taken anything from the store. (Tun: Tr. 376-77, 379, 385-87.)

At that point, Sergeant Nicholson entered the store with his gun drawn.[3/] (Tun: Tr. 324; Surjadi: Tr. 431; Nicholson: Tr. 553.) Tun told Sgt. Nicholson that there was "a robbery going on." (Nicholson: Tr. 552, 637.) Tun pointed out McLean in the back of the store; Sgt. Nicholson told McLean to get on the ground, and McLean did so, repeating that he was in the store looking for someone. (Tun: Tr. 325; Nicholson: Tr. 552-56.) When Sgt. Nicholson tried to handcuff McLean, McLean tried to grab Sgt. Nicholson (Tun: Tr. 325-28, 389-93; Nicholson: Tr. 556-57, 641), pushed Sgt. Nicholson off of him and ran toward the door, but Tun blocked his exit and a fight ensued between Sgt. Nicholson and McLean (Tun: Tr. 389-92, 399; Nicholson: Tr. 557-62, 567, 643-45, 647).

Sgt. Nicholson testified that during the fight, McLean was screaming: "you're not taking me to jail"; "you're going to have to kill me"; "I'm not going back to jail." (Nicholson: Tr. 557, 560-61.) Defense counsel did not object to this testimony. (Id.)

During the fight, Sgt. Nicholson saw a folding knife in McLean's hand that McLean was trying to "flick" open. (Nicholson: Tr. 558-59, 561, 647-48, 650.) As they continued wrestling, the knife disappeared from sight. (Nicholson: Tr. 560.) McLean grasped at Sgt. Nicholson's gun,

---

[3/] There had been a third person in the store when McLean came in, Victor Sdrougias, who was there to fix the cash register. (Sdrougias: Tr. 502-04.) When Surjadi called 911, he told Sdrougias there was a robbery taking place in the office, so Sdrougias went out to the street to look for a police officer. (Sdrougias: Tr. 505-07, 527-28, 533, 537-38.) He encountered Sergeant Nicholson coming out of a pizza shop a few blocks from Janoff's and told him there was a robbery taking place at Janoff's. (Sdrougias: Tr. 507-08, 515, 533-34; Nicholson: Tr. 550, 634.) Sgt. Nicholson immediately went toward Janoff's, and told Sdrougias to tell his partner, who was in another store buying food, where he had gone. (Sdrougias: Tr. 508, 515; Nicholson: Tr. 550.) Sdrougias found the partner, explained that Sgt. Nicholson had just gone to "try to stop a robbery," and followed the second officer to Janoff's. (Sdrougias: Tr. 508, 515-17; Judge: Tr. 710-11.)

but never go it out of Sgt. Nicholson's holster.  (Nicholson: Tr. 560, 562-64, 567.)  Throughout the

fight, Sgt. Nicholson was hitting McLean with his radio, his "fists and basically anything else [he]

could have gotten [his] hands on." (Nicholson: Tr. 567.)

      Once Sgt. Nicholson's partner arrived, the two were able to handcuff McLean.  (Tun:

Tr. 329; Surjadi: Tr. 437; Sdrougias: Tr. 509-11; Nicholson: Tr. 568; Judge: Tr. 715.)  The police

found a knife and a crack pipe on McLean.  (Nicholson: Tr. 576-79, 660; Judge: Tr. 716-17, 736.)

McLean had a cut on the top of his head that was bleeding.  (Judge: Tr. 724-25; Felipe: Tr. 881.)

Two other police officers arrived and drove McLean to the 32nd Precinct.  (Tun: Tr. 330-31; Judge:

Tr. 722; Felipe: Tr. 882.)

      McLean did not in fact take anything from the store.  (Tun: Tr. 386-87; Surjadi: Tr.

474-75, 480; Sdrougias: Tr. 526; Ma: Tr. 820.)

### Bench Conference and Further Testimony Regarding McLean's Statement that He Did Not Want to Go "Back" to Jail

      In a conference out of the jury's presence, the trial judge, Justice Corriero, sua sponte

raised Sgt. Nicholson's testimony that McLean said that he did not want to go back to jail  (Tr. 619):

> THE COURT:  There was testimony from the officer about the conversation that he had with the defendant about him not going back to prison.
>
>     Do you want me to give any kind of instruction with regard to that, to that testimony? . . .
>
> There was no objection at the time.
>
> [Defense Attorney] COHEN:  Actually, you know what, I would like to have it just lie, have nobody point it out, just let it be.

[ADA] KIM: But I have to be able to point to it because it goes to his intent. The charge is dealing with his intentional act.

THE COURT: Well, I'm not saying that you can't address it in your summation. . . but you have to be cautious.

[ADA] KIM: I'm not going to argue propensity, I'm just going to argue intent.

THE COURT: But if there is no evidence that he actually was in jail other than the statement, you have to be somewhat circumspect about how you do it.

[ADA] KIM: I'm going to confine myself to the statement . . . .

(Tr. 619-20.)

On cross-examination, defense counsel brought out that in Sgt. Nicholson's memo book, in which he recorded the events surrounding McLean's arrest approximately 24 hours after the incident occurred, Sgt. Nicholson had written down only that McLean had said that Sgt. Nicholson would not be able to take him alive. (Nicholson: Tr. 653-55.) Sgt. Nicholson had not recorded that McLean had made a statement referring to being taken back to jail, nor had he related such a statement when he testified before the grand jury. (Nicholson: Tr. 655-56.)

On re-direct examination, the ADA asked Sgt. Nicholson why he had not told the grand jury about McLean's statement that he was "not going back to jail," to which Sgt. Nicholson replied that he just "didn't think to say it." (Nicholson: Tr. 687-88.)

**Defense Counsel Summation**

During summation, defense counsel questioned Sgt. Nicholson's credibility, arguing that Sgt. Nicholson had "enhanced" the events in Janoff's to explain why he hit McLean on the head with his radio. (Defense Summation: Tr. 920-21, 923-28.)

Defense counsel further discussed Sgt. Nicholson's actions when he first entered Janoff's:

> [W]as [it] his lawful duty, to walk into a store not knowing what's going on and take a gun, point it at the first person he sees, order him on the floor and try and arrest him?
>
> Is that what we want our police officers to do?
>
> Or is his lawful duty, especially once Mr. McLean is lying on the ground to find out what happened.
>
> Is it so unreasonable that someone placed in Mr. McLean's situation on the ground with a gun resists an unlawful arrest.
>
> Because if you find that Sergeant Nicholson had no lawful duty to arrest him, you must acquit him.
>
> THE COURT: Ladies and gentlemen, look, you're getting into areas of law, [defense counsel] Cohen, and they may not conform to my instructions with respect to the areas of law.
>
> Now, lawful duty is a matter that I will define for the jury.
>
> And it seems to me that my understanding of the law is that if the officer had reasonable cause to place the defendant under arrest, then that would have been the compliance with his lawful duty.
>
> [Defense Counsel] COHEN: That's correct.
>
> THE COURT: And if, further, he was told that a robbery was taking place by a civilian, he would seem to have a lawful duty to place the person responsible under arrest.
>
> So confine your remarks within that context.

(Defense Summation: Tr. 928-30.) Defense counsel made no objection and continued with her summation. (Defense Summation: Tr. 930-31.)

**Prosecution Summation**

In summation, the prosecutor argued that Sgt. Nicholson was truthful in his recounting the fight with McLean. (Prosecution Summation: Tr. 954-55.)  The prosecutor discussed the nature of police officers:

> And, you know, with police officers it's different from us in this one respect, when we see trouble, you know, of course we're going to want to get away, you know, people, human reaction when they see trouble is to try to run from it.
>
> Police officers, on the other hand, have to overcome that human reaction by training, by occupation, they are trained to run to trouble when everyone else is running from it.

(Prosecution Summation: Tr. 955-56.)

When the prosecutor discussed McLean's intent as evidenced by the fact that he was carrying a knife and by his comments to the police upon his arrest, she asked that the jury

> [R]emember he was yelling and screaming throughout the fight.  I'm not going back to jail.  You're going to have to kill me.
>
> And use those statements as to what you think defendant's intent was when he was trying to pull out the sergeant's gun.
>
> . . .
>
> I submit to you, based on his own statements, based on his deliberate actions, that there was only one thing on his mind, which was to take that weapon and use it unlawfully, whether it be to shoot the sergeant or anyone else who gets in his way.

(Prosecution Summation: Tr. 958-59.)

The prosecutor returned to Sgt. Nicholson's job as a police officer:

> Sergeant Nicholson was doing nothing more than what we pay him, which is to enforce law and order.

I am not going to be doing that job, you shouldn't be expected to do that job. (Prosecution Summation: Tr. 962.) Defense counsel's objection to the last statements was overruled. (Id.) The prosecutor continued that "[t]he police officer is the one who is entrusted with that duty." (Id.)

At the end of her summation, the prosecutor asked the jury to imagine what George Ma, Janoff's owner (Ma: Tr. 784), would say if he were recounting the incident in Janoff's at a cocktail party. (Prosecution Summation: Tr. 969-71.) The prosecutor reiterated all the details of the incident, as Mr. Ma might tell it, including the fact that McLean fought with Sgt. Nicholson and that he said "you're not taking me alive, you're going to have to kill me before you take me in, I am not going back to jail. . . ." (Prosecution Summation: Tr. 970.)

**<u>Verdict and Sentence</u>**

The jury found McLean guilty of two counts of second degree burglary, and one count each of second degree assault, third degree criminal possession of a weapon, resisting arrest and second degree criminal possession of a controlled substance. (Tr. 1058-63.) The jury acquitted McLean of second degree attempted criminal possession of a weapon and attempted second degree robbery. (Tr. 1059.)

On October 8, 1996, Justice Corriero sentenced McLean as a mandatory persistent violent felon to twenty-five years to life imprisonment. (Dkt. No. 10: 10/8/96 Sentencing at 19, 34-35.)

**Indictment No. 1620/96**

**The Suppression Hearing**

On July 31, 1996, Justice Corriero held a suppression hearing to determine whether McLean's non-Mirandized statements in the police car on his way to the 24th Precinct and his written confession given after <u>Miranda</u> warnings were involuntarily made and whether the lineup identification procedures were unduly suggestive. (7/31/96 Suppression Hearing ["H."].) Justice Corriero continued the suppression hearing on January 27, 1997. (Dkt. No. 9: 1/27/97 Suppression Hearing ["1/27/97 H."].)

At the start of the suppression hearing, speaking on his own behalf, McLean moved to dismiss the indictment, arguing that he was denied the right to testify before the grand jury and that his removal from Central Booking had resulted in the postponement of his arraignment on the Janoff's burglary, that the police forced him to make inculpatory statements about the Ebony McCoy robbery and that he was denied counsel at the lineup for the Ebony McCoy robbery. (H. 7-17.) McLean explained that he had requested to testify before the grand jury and that his then-attorney had so indicated at a previous hearing. (H. 11-12.) The Assistant District Attorney explained that at that hearing McLean had already been indicted and the hearing was in fact his arraignment on that indictment. (H. 12-13.) The ADA also explained that McLean was charged by "NA" indictments because he had refused to be fingerprinted.[4] (H. 13-15.)

---

[4]     An "NA" indictment is an indictment obtained when the defendant has not been first charged in a felony complaint and thus the grand jury proceedings commence the criminal proceedings. (Dkt. No. 7: State Br. at 43.)

Justice Corriero denied McLean's motion and proceeded with the suppression hearing. (H. 15, 17.)

### **Identification of McLean as a Wanted Robbery Suspect at the 32nd Precinct**

McLean was wanted in the 24th Precinct for the three robberies that formed the basis for Indictment No. 1620/96.

Approximately 10 minutes after McLean had been brought into the 32nd Precinct on the Janoff's arrest, Sergeant Cody recognized McLean from a photograph on a police department poster portraying wanted robbery suspects. (Cody: H. 85-87.) Sgt. Cody informed the officers processing McLean's Janoff's arrest and gave them the contact information of the 24th Precinct detective listed on the poster, Detective Pandolfelli. (Cody: H. 88.)

Since McLean was bleeding from the head after his arrest in Janoff's (Cody: H. 88), Sgt. Cody called for an ambulance which took McLean to the hospital. (Cody: H. 89.)

24th Precinct Det. Pandolfelli, who had put McLean's name on the robbery wanted list for the Ebony McCoy robbery, was informed that McLean had been arrested and was being held at the 32nd Precinct for the Janoff's burglary. (Pandolfelli: H. 192-95.) Det. Pandolfelli went to the hospital to confirm that the suspect he was investigating had in fact been arrested. (Pandolfelli: H. 195-96, 220.) After seeing McLean, Det. Pandolfelli contacted Det. Gibson who was investigating the Vinnie Kakkar robbery for which McLean also was the suspect. (Pandolfelli: H. 197; Gibson: H. 103-05.)

**Transport of McLean to the 24th Precinct and Statements Made**

On February 27, 1996, Dets. Pandolfelli and Gibson went to Manhattan Central Booking, picked up McLean and took him to the 24th Precinct. (Gibson: H. 105-07; Pandolfelli: H. 193, 197-98.) McLean was not given his Miranda warnings prior to being transported to the 24th Precinct. (Gibson: H. 107; Pandolfelli: H. 198.) In the car on the way to the precinct, the detectives did not question McLean. (Gibson: H. 107; Pandolfelli: H. 198, 213.) However, according to Det. Pandolfelli, McLean made several statements including that he had been at the Ryan Center, a small clinic in the 24th Precinct, and then McLean said: "You know, I saw my niece [Ebony McCoy] there and I had to leave. I don't want you to think that I was hiding anything, you know. I wasn't trying to get away." (Pandolfelli: H. 199.) Det. Pandolfelli told McLean to "just relax, calm down" and that he would "explain everything and what's going on" when they got to the precinct. (Pandolfelli: H. 199, 215.) McLean also said he "was running away from the police. He was running into the projects. He ran into the building [where the Ebony McCoy robbery allegedly occurred]. . . . He ran up to a floor. He went to see a friend or something." (Pandolfelli: H. 201.) McLean was just "talking and talking" in the police car. (Pandolfelli: H. 201-02, 215-16.) At the precinct, Det. Pandolfelli told McLean that if he wanted to make a statement he would read him his rights and tell the district attorney that McLean had cooperated, but he could not control what the DA would do. (Pandolfelli: H. 216-19.) Det. Pandolfelli intended, "in a way," to give McLean the impression that he would ask for leniency with the DA, but never actually used the word "leniency" with McLean nor made any promises. (Pandolfelli: H. 223-24.) When he actually spoke to the

ADA, Det. Pandolfelli did not ask for leniency for McLean but did tell the ADA that McLean had not "give[n] [him] a hard time or anything." (Pandolfelli: H. 224.)

### McLean's Written Confession and the Identification Procedures Conducted at the 24th Precinct

Once McLean was at the 24th Precinct, Det. Pandolfelli put McLean in the holding cell and "made sure he was as comfortable as possible." (Pandolfelli: H. 203.) The detective observed that McLean had a band-aid on his head but McLean did not complain of any dizziness or physical ailments, or ask for medical care, nor did McLean have any medication on him when they had picked him up from Central Booking. (Pandolfelli: H. 204-05, 211.)

McLean was put in a confirmatory lineup where Ebony McCoy identified him.[5] (Pandolfelli: H. 221.) After that, Det. Pandolfelli read McLean his <u>Miranda</u> rights and began questioning McLean about the McCoy robbery. (Pandolfelli: H. 221-22.) McLean gave a written statement, confessing to the robbery of Ebony McCoy. (Pandolfelli: H. 206-10.)

Det. Gibson called in Vinnie Kakkar to view a lineup. (Gibson: H. 108, 151-52.) There were five "fillers" in the lineup and the six man was McLean. (Gibson: H. 109.) Kakkar identified McLean as the man who had robbed him. (Gibson: H. 112-13.)[6]

---

[5] A confirmatory lineup is where the suspect is seated alone in a room with a one-way mirror and a witness is asked to make an identification of the suspect from the opposite side of the one-way mirror. (Pandolfelli: H. 221.)

[6] On January 16 into the early morning hours of the 17th, 1996, the day McLean allegedly robbed Kakkar, Kakkar had identified a man on the street in a show-up identification. (Mercandett: 1/27/97 H. 12-14.) No arrest was made at that time because the man fled the scene and the police were unable to find him. (Mercandett: 1/27/97 H. 13-14, 16-17.) Two days later, Kakkar viewed a photo array and identified someone, not McLean, as the person
(continued...)

Once Kakkar was finished, Theodoro Quintana was called down to view the lineup. (Gibson: H. 114-17.)  Quintana identified McLean as the person who had robbed him.  (Gibson: H. 119-21.)  Thirteen days earlier, Quintana had identified McLean in a photo array.  (Gibson: H. 115-16; Howard: H. 159.)[7]

**The Suppression Hearing Decision**

On April 10, 1997, Justice Corriero denied McLean's suppression motion.  (Dkt. No. 8: Chaffee Aff. Ex. E: 4/10/97 J. Corriero Decision.)  Justice Corriero ruled that the lineup identification by Kakkar was not unduly suggestive.  (4/10/97 Corriero Decision at 8-10.)  Further, the judge ruled that the fact that Kakkar had chosen someone else from the mugbook photos "does not disqualify him from viewing the lineup," and there was nothing unfair in the composition of the lineup or the police interaction with Kakkar.  (Id. at 10.)  Justice Corriero also denied the motion as to Quintana's identification.  (Id. at 10-15.)

Justice Corriero ruled that since McLean was speaking spontaneously and was not being questioned by the police when he made the oral statements during the car ride to the 24th

---

[6] (...continued)
who had robbed him.  (Gibson: H. 138-42.)  The man Kakkar identified from the photo array was incarcerated on the day of the robbery and therefore could not have been the man who robbed him.  (Gibson: H. 144.)

[7] On the day he was robbed, Quintana looked through four books of mug shots but did not identify anyone, looked through approximately 30 loose photos and did not identify anyone, then the detective conducting the photo array got a photo of McLean from a detective who was investigating one of the other robbery cases for which McLean was a suspect which sounded similar to the one Quintana had described, and showed that photo to Quintana. (Howard: H. 162-67, 172-76.)  Quintana identified McLean from that photo as the man who had robbed him earlier that day.  (Howard: H. 168.)

Precinct, the officers were not required to administer <u>Miranda</u> warnings. (4/10/97 Corriero Decision at 15.) As to McLean's written confession, Justice Corriero ruled that Det. Pandolfelli's statement that he would tell the district attorney about McLean's cooperation was not impermissibly coercive, and thus the confession was voluntary. (<u>Id</u>. at 16-18.)

### McLean's First Guilty Plea on the 1620/96 Indictment

On June 11, 1997, jury selection was set to begin on the Ebony McCoy robbery under Indictment 1620/96. (Dkt. No. 14: 6/11/97 Plea Transcript ["P1."].) The defense brought to Justice White's attention that McLean had an EKG scheduled for the following day as part of his treatment for a heart condition and diabetes. (P1. 25-26.) Since the case was on for trial, Justice White said the EKG would have to be rescheduled for the following week, after the trial concluded. (P1. 26.) At that point, McLean, through his attorney, expressed his intent to plead guilty. (P1. 27.) The offer from the prosecution, which had been confirmed by Justice Corriero who had presided over McLean's jury trial on the Janoff's burglary, was that if McLean pled guilty, he would be sentenced to twenty years to life to run concurrent to his sentence for the Janoff's conviction, but if he proceeded to trial his sentences could run consecutively. (P1. 27-28.)

McLean explained, through his attorney, that the reason he wanted to plead guilty was because he felt, medically, he could not "undertake the pressure of the trial." (P1. 30.) Justice White declined to accept a guilty plea under those circumstances:

> THE COURT: The court will not accept a plea on that basis, will only accept a plea if he's interested in pleading guilty because he's guilty of the charges.

[Defense Counsel] LEVY: What he wants me to express is that he feels his medical needs are at this point substantial and that they're not being addressed by the court and that he has no alternative but to in effect abort the trial.

THE COURT: Well, I'm not taking a plea under those circumstances. We'll bring in the jurors and tell Judge Corriero that the defendant has now changed his mind; is that correct?

THE DEFENDANT: Yes.

(P1. 30.) Justice White began jury selection. (P1. 30-55.) After the lunch recess, McLean renewed his desire to plead guilty. (P1. 56.) Justice White clarified why McLean wished to plead guilty:

THE COURT: . . . [T]his is with the clear understanding that this plea was not being considered because of any medical problems – – Is that correct, Mr. McLean?

THE DEFENDANT: That is correct.

THE COURT: It is because you wish to enter a plea to the charge because in fact you're guilty of the charge and want the best deal possible; is that correct?

THE DEFENDANT: That's correct.

(P1. 61.) After discussion with Justice Corriero, Justice White confirmed that if McLean pled guilty to all three robberies charged in Indictment 1620/96, McLean would be sentenced to 20 years to life to run concurrent to the sentence imposed after his Janoff's burglary jury trial before Justice Corriero. (P1. 61-62, 68.) McLean told Justice White, through his attorney and later in his own words, that he wanted to plead guilty only to the Ebony McCoy robbery and defer any disposition on the other two robberies, which Justice White agreed to do. (P1. 62, 69.)

McLean accordingly pled guilty to the first three counts of Indictment 1620/96 pertaining to the Ebony McCoy robbery. (P1. 63-67.) Justice White inquired whether McLean was aware of the rights he was giving up by pleading guilty:

THE COURT: So you understand when you plead guilty you are giving up your right to a trial by jury?

THE DEFENDANT: Yes.

THE COURT: And we are in the process of selecting that very jury so you are giving up your right to continue with the trial that has already commenced – – understand that?

THE DEFENDANT: Yes.

. . .

THE COURT: Are you pleading guilty voluntarily of your own free will because in fact you are guilty of these crimes?

THE DEFENDANT: Because I'm guilty of the crime.

(P1. 66-67.)

On July 8, 1997, at the start of McLean's sentencing (Dkt. No. 13: 7/8/97 Sentencing Transcript ["S2."]), McLean's attorney informed Justice White that McLean wished to withdraw his guilty plea:

[Defense Counsel] LEVY: Judge, Mr. McLean informed me that he wishes to withdraw his plea, the basis of that is contradictory advi[c]e between counsel that represented him over the course of the indictment pending, the immediate cause was medication he was taking as a result of the psychiatric condition from Riker's Island that made him incapable, made him confused and incapable of rendering independent judgement at the time the plea was made.

He also indicates he was extremely reluctant . . . to admit guilt, and does not believe he was guilty and repeatedly asked the Court to take an [Alford] plea under the circumstances.

And for those reasons I guess what should happen is new counsel should be appointed and a motion should be made in writing and he would request that.

He also requests your Honor order a [C.P.L. §] 730 examination. He claims he does not understand the proceedings or the players in those proceedings.

(S2. 2-3.)

Justice White concluded that McLean had been "coherent" when he pled guilty and that he had done so "without question intelligently" and "knowingly," and Justice White saw "no basis for an application to withdraw a plea." (S2. 4.) She thus proceeded with sentencing. (S2. 4.) Defense counsel stated that he had not known that McLean was on psychiatric medication when McLean had entered his guilty plea and asked Justice White "to consider that both in reconsidering the application and imposing sentence." (S2. 6.)

McLean told Justice White that he had "attempted to be sentenced under the [Alford] plea on numerous occasions in front of Judge Corriero [who presided over his Janoff's jury trial] and in front of this Court because [he is] innocent and didn't want to plead guilty." (S2. 6.) McLean said that he was told if he pled guilty here, and his other conviction was reversed, this guilty plea would also be reversed, but he had since learned that was not the case. (S2. 6-7.) McLean proclaimed that there was "a lot of pressure on [him] to cop out to 20 to life" and that he could not believe he "admitted to cop out to 20 to life." (S2. 7.) Further, McLean proclaimed: "It is not something I will do, especially since I'm innocent on the case." (S2. 7.)

Justice White sentenced McLean as a mandatory persistent felon to a sentence of 20 years to life on each count to run concurrent to each other and to run concurrent to the sentence he was already serving for his Janoff's jury trial conviction before Justice Corriero. (S2. 8.) Justice

White sent the remaining counts in Indictment 1620/96 back to Justice Corriero's part for trial. (S2. 8.)

### McLean's Second Guilty Plea on Indictment 1620/96

On February 2, 1998, McLean appeared before Justice Bruce Allen for a pretrial conference on the remaining charges in Indictment 1620/96, the Kakkar and Quintana robberies. (Dkt. No. 12: 2/2/98 Ct. Appearance ["A."].)  After discussing McLean's claim that he was being denied access to the prison law library (A. 2-9), Justice Allen addressed McLean directly about the remaining charges he faced:

> What I was getting at, Mr. McLean, and I just want you to be clear on all of this, is that [ADA] Kim tells me that even today, even though the case is about to go to trial, that she does not oppose concurrent time on this case if there is a plea.
>
> If you go to trial and you lose, I can tell you, I can guarantee you that you're going to get consecutive time.  And the minimum consecutive time is 20, the maximum is 25.  But the statute doesn't even give me that much room.  The stakes are enormously high and I know that you understand that.
>
> THE DEFENDANT:  Yes, I do.
>
> THE COURT:  And you've had some time to think about it.  But, you know, there always comes a moment when there is no turning back and we've just about reached that point.  And I don't know what else to tell you.  I mean, it's your life.  And you looked at me like you're not so old that you don't at least have some hope of obtaining freedom before you're finished.  But if you lose on this case I think that it's all over.  And that's a terrible reality for you to have to face.
>
> THE DEFENDANT:  I understand where you're coming from.
>
> THE COURT:  I just lay it out to you.  I don't know how strong the case is, I don't know that much about the case.  I'm not trying to pressure you.  I can assure you that you'll receive as fair a trial as anybody can receive in this courtroom.  But that's what you're facing if you lose.

THE DEFENDANT:  I understand.

(A. 9-10.)  The conference continued with pretrial motions and Justice Allen's conclusion after speaking with corrections officials that McLean did, in fact, have access to the law library, despite McLean's protestations to the contrary.  (A. 11-34.)

McLean told Justice Allen that "it doesn't make sense for me being here and I can't participate in it anyway because I can't research the appropriate work. . . . So I waive the right to be present [at trial]."  (A. 35.)  McLean's attorney moved for a four to five day adjournment of the trial so that he could investigate McLean's housing situation.  (A. 35-37.)  Defense counsel said that McLean had informed him "on a couple of occasions that he feels physically threatened by his present location because of enemies that are there" and that "[u]nder these circumstances he feels that it would be improvident and impossible for him to go to trial, which is why he has simply said that he would rather not be seen or heard from because he can't participate."  (A. 37.)

Before breaking for lunch, Justice Allen told McLean:  "[Y]ou have some thinking to do over lunch, Mr. McLean, because the trial is going to go forward with you or without you.  And you can be your own worst enemy here by not coming to court."  (A. 41.)  McLean responded:

> It's not possible for me to go to trial where I'm at right now.  I mean, if you want to believe Corrections, I have the documents to prove it.  Then, I have no, you know, I have no say so in the matter.  It's like you Shang[ha]i me into trial and I don't have any legal work, I don't have any clothes.  I can't participate in the law library.  And you're telling me because Corrections tells you that I can, that that's absolute.  And I'm telling you that it's not absolute, that I cannot participate in the law library.
>
> Then you're telling me to go to trial and I can't help defend myself.  So therefore, what sense does it make my being here? . . .

(A. 41-42.) Justice Allen made further phone calls to Corrections officers over the lunch break, and, after lunch, reported on the record that he had spoken to a Corrections Captain who was "very familiar" with McLean and who "assured" the court that McLean had access to the law library, as did all defendants. (A. 42, 46-47.) McLean was not present in the courtroom, having refused to return to court after lunch. (A. 46.) Defense counsel further explained McLean's position and also made a C.P.L. § 730 motion. (A. 47-48.) Justice Allen denied the § 730 motion (A. 54) and proceeded with pre-trial motions and jury selection in McLean's absence. (A. 54-145).

The next day, February 3, 1998, defense counsel informed Justice Allen that McLean wished to plead guilty to the fourth count of the indictment – first degree robbery of Kakkar – in satisfaction of the entire balance of the indictment with the understanding that a sentence of 25 years to life would be imposed to run concurrent to the sentences already imposed and that should McLean prevail on his appeals of his two previous cases, he would be able to withdraw this guilty plea. (Dkt. No. 11: 2/3/98 Plea Proceeding ["P2."] 2-3; see Chaffee Aff. Ex. B: Ind. No. 1620/96.) Before McLean allocuted to the Kakkar robbery count, Justice Allen asked McLean:

> THE COURT: Have you had enough time to discuss with [your attorney] your decision to plead guilty?
>
> MR. McLEAN: Yes.
>
> THE COURT: Has anybody threatened you or forced you to plead guilty?
>
> MR. McLEAN: No. I'm pleading guilty with the stipulation that - - no.
>
> THE COURT: Do you understand that by pleading guilty you give up your right to a jury trial?
>
> MR. McLEAN: Yes.

(P2. 5-7.)  Once McLean allocuted to the offense (P2. 5-6), Justice Allen reiterated that the conditions of the plea were that McLean's sentence would run concurrent to his two previous sentences and that a successful appeal on those cases would enable him to withdraw his guilty plea on the Kakkar robbery.  (P2. 6.)  McLean agreed that that was his understanding of the plea deal. (P2. 6-7.)  Justice Allen further asked whether McLean understood:

> That this allocution will not be used against you at such a trial on this case?
>
> MR. McLEAN:  Yes.
>
> THE COURT:  Were any other promises made?
>
> MR. McLEAN:  No.

(P2. 7.)  Justice Allen accepted McLean's guilty plea.  (P2. 8.)[8/]  Justice Allen adjudicated McLean

---

[8/]     Justice Allen allowed the ADA to ask additional questions concerning McLean's mental fitness and ability to understand the plea:

> [ADA] KIM:  . . . [A]re you able to think clearly and to understand what the Judge has been telling you?
>
> MR. McLEAN:  Yes; I understand the conditions of the plea.
>
> [ADA] KIM:  And, sir, are you currently on any sort of medication?
>
> MR. McLEAN:  Yes, I am.
>
> [ADA] KIM:  And, sir, is that medication interfering with your ability to understand and to perceive?
>
> MR. McLEAN:  No, it's not.
>
> . . .

(continued...)

a persistent violent felon and set a date for sentencing. (P2. 11-18.) McLean was sentenced on

April 6, 1998 in compliance with the conditions agreed to at his guilty plea proceeding. (Dkt. No.

7: State Br. at 8.)[9/]

## McLean's Direct Appeal

Represented by the Legal Aid Society Criminal Appeals Bureau, McLean's appeal to

the First Department raised three claims: (1) McLean was deprived of his Due Process right to a fair

trial under Indictment No. 1599/96 (the Janoff's burglary) when (a) the prosecutor improperly

repeated references to McLean's alleged statement that he would not "go 'back' to jail" "particularly

where that message was juxtaposed to her attestations that the police officers in this case were honest

and credible witnesses as well as superhuman protectors of our neighborhoods"; and (b) the judge's

instruction to the jury during defense counsel's summation on the lawful duty of police officers, after

defense counsel had argued that the police had no lawful duty to arrest McLean, "both took that

element from the jury and reinforced the prosecutor's suggestion that appellant was a dangerous

individual with a criminal propensity" (Dkt. No. 8: Chaffee Aff. Ex. F: McLean 1st Dep't Br. at 25-

40); (2) Theodore Quintana's lineup identification of McLean should have been suppressed (id. at

---

[8/]        (...continued)
        [ADA] KIM:  Okay.  Is there anything that you did not understand which was part
        of this plea allocution?

        MR. McLEAN:  I just answered that question.  I said I understood the plea.

(P2. 8.)

[9/]    The transcript for that sentencing hearing is unavailable.  (State Br. at 8 n.6; Dkt. No. 8:
        Chaffee Aff. Ex. F: McLean 1st Dep't Br. at 23 n.6.)

40-45); and (3) McLean's guilty pleas should be vacated because they were "improperly induced by the courts' explicit threats that if [McLean] insisted on going to trial and was convicted, they would run the sentences consecutively to the 25 years to life sentences he was already serving" (id. at 45-49). McLean sought to challenge Quintana's lineup identification and vacate his guilty pleas only in the event the First Department reversed his Janoff's trial conviction, but if the First Department affirmed his trial conviction, McLean did not seek withdrawal of his guilty pleas or to challenge the lineup. (Id. at 45 n.7, 46 n.8.)

Additionally, McLean filed a pro se supplemental appeal brief in which he claimed that: (1) his statements to the police should have been suppressed because they were made in violation of his right to counsel (Ex. G: McLean Pro Se Supp. 1st Dep't Br. at 1); (2) his arraignment was unnecessarily delayed which caused him to be denied counsel and the right to testify before the grand jury, and the prosecutor failed to "establish a valid reason for [the] delay of arraignment, as well as [the] purpose for N.A. indictments" (id.); (3) prosecutorial misconduct denied him his right to due process when the prosecutor (a) repeatedly withheld Rosario material and violated discovery rules; and (b) "circumvented [McLean's] criminal court arraignment, then unlawfully indicted [McLean] under N.A. indictments on both indictment[s]" which deprived McLean of his right to testify before the grand jury (id. at 1-2); (4) he received ineffective assistance of trial counsel (id. at 2); and (5) he was denied his right to a fair trial by the trial judge who allowed the ADA to violate Rosario, Brady and discovery rules, helped the ADA argue its case and painted "false and misleading pictures to the jury" (id.).

On October 23, 2003 the First Department affirmed McLean's convictions.  People

v. McLean, 309 A.D.2d 639, 735 N.Y.S.2d 626 (1st Dep't 2003).  With respect to McLean's main

brief claims as to the Janoff's conviction, the First Department held each claim was "unpreserved"

and "decline[d] to review them in the interest of justice."  Id. at 639, 735 N.Y.S.2d at 626.

Alternatively, the First Department held:

> Were we to review these claims, we would find that uncharged crime evidence was
> properly admitted because it was relevant to defendant's intent with respect to the
> resisting arrest and assault charges and because its prejudicial effect was minimal;
> we would find that the challenged portions of the prosecutor's summation were
> responsive to the defense summation; and we would find that the jury instruction
> given by the court during defendant's summation was appropriate since the defense
> argument had the potential for misleading the jury on the law and since the
> instruction did not undermine any proper summation arguments.

Id. at 639-40, 735 N.Y.S. 2d at 626-27.

Since the First Department affirmed McLean's trial conviction and he sought to vacate

his guilty pleas only upon a reversal of his trial conviction, the First Department did "not reach

[McLean's] arguments relating to his guilty pleas, including his arguments relating to suppression

of identification testimony."  Id. at 640, 735 N.Y.S.2d at 627.

Finally, the First Department "considered and rejected the claims contained in

[McLean's] pro se supplemental brief."  Id.

On January 29, 2004, the New York Court of Appeals denied leave to appeal.  People

v. McLean, 1 N.Y.3d 598, 776 N.Y.S.2d 230 (2004).

**McLean's Federal Habeas Petition**

McLean's amended habeas petition raises the following claims: (1) he was deprived of his Due Process right to a fair trial under Indictment Number 1599/96 (the Janoff's burglary) because (a) the prosecutor's repeated references to his "alleged statement that he would not go 'back' to jail" were improper particularly when "juxtaposed to [the prosecutor's] attestations that the police officers in this case were honest and credible witnesses as well as superhuman protectors of our neighborhoods"; and (b) the trial judge "infringed on the defense's right to make an effective summation" by instructing the jury during defense counsel's summation on the lawful duty of police officers, after defense counsel had argued that the police had no lawful duty to arrest McLean, thereby "both t[aking] an element from the jury and reinforc[ing] the prosecutor's suggestion that appellant was a dangerous individual with a criminal propensity" (Am. Pet. ¶ 12(a)); (2) Theodore Quintana's lineup identification of McLean should have been suppressed (id. ¶ 12(b)); (3) McLean's two guilty pleas should be vacated because they were "improperly induced by the courts' explicit threats that if [McLean] insisted on going to trial and was convicted, [the court] would run the sentences consecutively to the 25 years to life sentences he was already serving" (id. ¶ 12(c)); (4) he "was deprived of his Due Process right to undelayed arraignment . . . for the purpose of depriving [McLean] of his right to counsel and [McLean's] right to testify before the grand jury" thus his "inculpatory statements, and confessions should have been suppressed and the indictment should [have] been dismissed" (id. ¶ 12(d)(I)); (5) his written confession and the lineup identification should have been suppressed because both were conducted without counsel even though his right to counsel had attached (id. ¶ 12(d)(II)); and (6) ineffective assistance of trial counsel (id. ¶ 12(d)(III)).

## ANALYSIS

I.     **THE AEDPA REVIEW STANDARD[10]**

---

[10]    For additional decisions by this Judge discussing the AEDPA review standard in language substantially similar to that in this entire section of this Report & Recommendation, see, e.g., Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *11-14 (S.D.N.Y. July 14, 2006) (Peck, M.J.); A.S.Goldmen, Inc. v. Phillips, 05 Civ. 4385 & 05 Civ. 5496, 2006 WL 1881146 at *28-31 (S.D.N.Y. July 6, 2006) (Peck, M.J.); Rosario v. Walsh, 05 Civ. 2684, 2006 WL 1431410 at *12-15 (S.D.N.Y. May 25, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1880958 (S.D.N.Y. July 5, 2006); Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *6-8 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *13-16 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Nelson v. Sears, 05 Civ. 10341, 2006 WL 775123 at *5-8 (S.D.N.Y. Mar. 28, 2006) (Peck, M.J.); Hopkins v. Burge, 05 Civ. 8230, 2006 WL 519782 at *7-10 (S.D.N.Y. Mar. 3, 2006) (Peck, M.J.); Bryant v. Fischer, 05 Civ. 0437, 2005 WL 3418282 at *10-14 (S.D.N.Y. Dec. 14, 2005) (Peck, M.J.); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *5-8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Ellis v. Phillips, 04 Civ. 7988, 2005 WL 1637826 at *9-11 (S.D.N.Y. July 13, 2005) (Peck, M.J.); Murray v. Schultz, 05 Civ. 0472, 2005 WL 1523504 at *7-10 (S.D.N.Y. June 29, 2005) (Peck, M.J.); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *14-17 (June 10, 2005 S.D.N.Y) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *9-11 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *5-8 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Boyd v. Smith, 03 Civ. 5401, 2004 WL 2915243 at *5-7 (S.D.N.Y. Dec. 17, 2004) (Peck, M.J.) (citing my earlier cases); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *12-14 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my earlier cases); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *14 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mendez v. Artuz, 98 Civ. 2652, 2000 WL 722613 at *22 (S.D.N.Y. June 6, 2000) (Peck, M.J.), report & rec. adopted, 2000 WL 1154320 (S.D.N.Y. Aug. 14, 2000), aff'd, 303 F.3d 411, 417 (2d Cir. 2002), cert. denied, 537 U.S. 1245, 123 S. Ct. 1353 (2003); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *10 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

Before the Court can determine whether McLean is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[11]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[12] Both,

---

[11] See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[12] Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. (continued...)

however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence."

Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[13] "That federal law, as defined by the

Supreme Court, may either be a generalized standard enunciated in the [Supreme] Court's case law

or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v.

Miller, 289 F.3d at 42. "A petitioner cannot win habeas relief solely by demonstrating that the state

court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord,

e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in [Supreme Court] cases. . . . A state-court decision will also be
> contrary to [the Supreme] Court's clearly established precedent if the state court
> confronts a set of facts that are materially indistinguishable from a decision of [the

---

[12]    (...continued)
Greiner, 337 F.3d 175, 181 (2d Cir. 2003), cert. denied, 540 U.S. 1091, 124 S. Ct. 962
(2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113,
125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214
F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[13]    Accord, e.g., Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004)
("We look for 'the governing legal principle or principles set forth by the Supreme Court at
the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123
S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003)
("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the
dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court
decision.'"); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d
Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d
at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341
F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert.
denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir.
2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[14]

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[15] However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[16] Rather, the issue is "whether the state court's

---

[14] Accord, e.g., Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[15] Accord, e.g., Brown v. Payton, 125 S. Ct. at 1439; Wiggins v. Smith, 123 S. Ct. at 2534-35; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[16] See also, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 123 S. Ct. at 2535; Price v. Vincent, 123 S. Ct. at 1853 ("As we have explained, 'a federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable

(continued...)

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor, 529 U.S. at 409, 120 S. Ct. at 1521.[17/]  "Objectively unreasonable" is different from "clear error." Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"  Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[18/]  "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule."  Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[19/]

_____

[16/]     (...continued)
application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

[17/]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 123 S. Ct. at 2535; Price v. Vincent, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[18/]     Accord, e.g., Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[19/]     The Supreme Court explained:

            [T]he range of reasonable judgment can depend in part on the nature of the relevant
                                                                          (continued...)

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[20/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2)

---

[19/]     (...continued)
rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.

[20/]     Accord, e.g., Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220: Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a 'determination on the merits' and as such requires the deference specified by § 2254." Moreover, "[I]f any reasonable ground was available [for the state court's decision], we must assume that the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference.").[21/]

---

[21/]    Accord, e.g., Cox v. Donnelly, 387 F.3d at 197 ("Neither the Appellate Division nor the New York Court of Appeals addressed [petitioner's] argument beyond a brief statement that the argument was without merit. In the absence of any expressed reasoning behind this conclusion, we turn directly to the facts of the case to determine whether Strickland was applied unreasonably."); Dallio v. Spitzer, 343 F.3d at 559-60; Parsad v. Greiner, 337 F.3d
(continued...)

"By its terms, § 2254(d) requires such deference only with respect to a state-court 'adjudication on the merits,' not to a disposition 'on a procedural, or other, ground.' Where it is 'impossible to discern the Appellate Division's conclusion on [the relevant] issue,' a federal court should not give AEDPA deference to the state appellate court's ruling." Miranda v. Bennett, 322 F.3d 171, 177-78 (2d Cir.

---

21/     (...continued)
at 180-81; Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); Eze v. Senkowski, 321 F.3d at 121; Ryan v. Miller, 303 F.3d at 245; Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir.), cert. denied, 537 U.S. 1093, 123 S. Ct. 694 (2002); Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

The Second Circuit "recognize[d] that a state court's explanation of the reasoning underlying its decision would ease our burden in applying the 'unreasonable application' or 'contrary to' tests." Sellan v. Kuhlman, 261 F.3d at 312. Where the state court does not explain its reasoning, the Second Circuit articulated the analytic steps to be followed by a federal habeas court:

> We adopt the Fifth Circuit's succinct articulation of the analytic steps that a federal habeas court should follow in determining whether a federal claim has been adjudicated "on the merits" by a state court. As the Fifth Circuit has explained, "[W]e determine whether a state court's disposition of a petitioner's claim is on the merits by considering: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999).

Sellan v. Kuhlman, 261 F.3d at 314; accord, e.g., Cotto v. Herbert, 331 F.3d at 230; Eze v. Senkowski, 321 F.3d at 121-22; Norde v. Keane, 294 F.3d at 410; Aparicio v. Artuz, 269 F.3d at 93; see also Dallio v. Spitzer, 343 F.3d at 560.

2003) (citations omitted).[22/] Of course, "[i]f there is no [state court] adjudication on the merits, then the pre-AEDPA, de novo standard of review applies." Cotto v. Herbert, 331 F.3d at 230.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II. MCLEAN'S CLAIM OF PROSECUTORIAL MISCONDUCT AND IMPROPER JUDICIAL INTERFERENCE WITH DEFENSE COUNSEL'S SUMMATION IS BARRED BY ADEQUATE AND INDEPENDENT STATE LAW GROUNDS

McLean claims that he was deprived of his right to a fair trial because the prosecutor improperly referred to his statement that he "would not go 'back' to jail" which he asserts was improper particularly "where that message was juxtaposed to [the prosecutor's] attestations [during her summation] that the police officers in this case were honest and credible witnesses as well as

---

[22/]  The Second Circuit in Miranda v. Bennett continued: "Generally, when the Appellate Division opinion states that a group of contentions is either without merit 'or' procedurally barred, the decision does not disclose which claim in the group has been rejected on which ground. If the record makes it clear, however, that a given claim had been properly preserved for appellate review, we will conclude that it fell into the 'without merit' part of the disjunct even if it was not expressly discussed by the Appellate Division." Id. at 178.

superhuman protectors of our neighborhoods." (Dkt. No. 5: Am. Pet. ¶ 12(a).) Additionally,

McLean asserts he was denied a fair trial because the trial court "infringed on the defense's right to

make an effective summation by directing the jury to discount counsel's argument that there was no

factual support to find that the police had a lawful duty to arrest" McLean. (Id.)

A. **Adequate and Independent State Ground Doctrine[23/]**

The Supreme Court has made clear that the "adequate and independent state ground

doctrine applies on federal habeas," such that "an adequate and independent finding of procedural

default will bar federal habeas review of the federal claim, unless the habeas petitioner can show

cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the

---

[23/] For additional decisions by this Judge discussing the adequate and independent state ground doctrine in language substantially similar to that in this entire section of this Report and Recommendation, see, e.g., Hardison v. Artus, 06 Civ. 0322, 2006 WL 1330064 at *9 (S.D.N.Y. May 16, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1763678 (S.D.N.Y. June 23, 2006); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *34 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *8 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Roman v. Filion, 04 Civ. 8022, 2005 WL 1383167 at *22-23 (June 10, 2005 S.D.N.Y.) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *20-21 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *17-18 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.) (citing my prior decisions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *18-21 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Rosario v. Bennett, 01 Civ. 7142, 2002 WL 31852827 at *18- 21 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (citing my prior decisions); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *8-9 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Mercado v. Portuondo, 99 Civ. 11234, 2000 WL 1663437 at *12 (S.D.N.Y. Nov. 3, 2000) (Peck, M.J.), report & rec. adopted, 2001 WL 987926 (S.D.N.Y. Aug. 29, 2001), aff'd, No. 01-2701, 77 Fed. Appx. 546, 2003 WL 22114571 (2d Cir. Sept. 15, 2003); Owens v. Portuondo, 98 Civ. 6559, 1999 WL 378343 at *5 (S.D.N.Y. June 9, 1999) (Peck, M.J.), aff'd, No. 99-2416, 205 F.3d 1324 (table), 2000 WL 246226 (2d Cir. Feb. 22, 2000).

federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations & internal quotations omitted).[24/]

"[I]n order to preclude federal review [under the adequate and independent doctrine], the last state court to render judgment must 'clearly and expressly state [ ] that its judgment rest[ed] on a state procedural bar.'" Jones v. Vacco, 126 F.3d at 415 (quoting Glenn v. Bartlett, 98 F.3d at 724). The Second Circuit has made clear that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d at 9; accord, e.g., Harris v. Reed, 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").[25/] Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails

---

[24/]     See also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16, 115 S. Ct. 851, 860-61 (1995); Coleman v. Thompson, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); Murray v. Carrier, 477 U.S. 478, 485-88, 496, 106 S. Ct. 2639, 2644-45, 2649-50 (1986); Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); Garcia v. Lewis, 188 F.3d 71, 76-77 (2d Cir. 1999); Reyes v. Keane, 118 F.3d 136, 138-40 (2d Cir. 1997); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[25/]     See, e.g., Garcia v. Lewis, 188 F.3d at 77-82; Glenn v. Bartlett, 98 F.3d at 724-25; see also, e.g., Santiago v. People, 97 Civ. 5076, 1998 WL 803414 at *4 (S.D.N.Y. Oct. 13, 1998) ("When the state court rejects a claim both on the merits and because it was waived under the state's procedural law, review of the claim on a federal habeas corpus petition is barred.").

reconsideration of the federal issue on federal habeas." <u>Harris</u> v. <u>Reed,</u> 489 U.S. at 264 n.10, 109 S. Ct. at 1044 n.10.

### B. McLean's Claims Are Procedurally Barred

The First Department rejected McLean's claim that the prosecutor improperly referred to his statement that he did not want to "go back to jail," and that the prosecutor had improperly bolstered the testimony of Sgt. Nicholson, holding that these claims were unpreserved and "decline[d] to review them in the interest of justice." (<u>See</u> page 26 above.) Additionally, the First Department held that "[w]ere [it] to review these claims" it would find them meritless. (Quoted in full on page 26 above.)

> State courts are not required to use any particular language:
>
> We encourage state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest, but we will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim – every state appeal, every denial of state collateral review – in order that federal courts might not be bothered with reviewing state law and the record in the case.

<u>Coleman</u> v. <u>Thompson,</u> 501 U.S. 722, 739, 111 S. Ct. 2546, 2559 (1991).

Furthermore, unlike the situation where the state court holds that claims were either unpreserved <u>or</u> without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review,[26] here the First Department explicitly stated that it found McLean's claim

---

[26]    <u>See</u>, <u>e.g.</u>, <u>Galarza</u> v. <u>Keane</u>, 252 F.3d 630, 637 (2d Cir. 2001) ("We have found a state court's reliance on a state procedural bar to be ambiguous, and thus refused to invoke a procedural bar, where . . . the state court rejected defendant's claims on appeal as 'either meritless or (continued...)

"unpreserved," <u>People</u> v. <u>McLean</u>, 309 A.D.2d 639, 639, 735 N.Y.S.2d 626, 626 (1st Dep't 2003), and the fact that the First Department also stated the conclusion it would reach on the merits "[w]ere [it] to review these claims," <u>id</u>. at 639-40, 735 N.Y.S.2d at 626-27, does not change the result. <u>See</u>, <u>e.g.</u>, <u>Fama</u> v. <u>Comm'r of Corr. Servs.</u>, 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved"); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724-25 & n.3 (2d Cir. 1996), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1997) (state decision which denied prosecutorial misconduct claim as not preserved for appellate review represented an independent and adequate state procedural ground even though court addressed merits of claim "in the interests of justice"); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (state decision which denied claims as procedurally barred but then alternatively addressed merits rested on adequate and independent state

---

<u>26/</u>    (...continued)
unpreserved.'"); <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 247 (2d Cir. 1998); <u>Reid</u> v. <u>Senkowski</u>, 961 F.2d 374, 377 (2d Cir. 1992).

grounds).[27/] Thus, the First Department's decision here unambiguously rested on a state procedural

---

[27/] See also, e.g., Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989); Harris v. Woods, 05 Civ. 5582, 2006 WL 1140888 at *35 (S.D.N.Y. May 1, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 1975990 (S.D.N.Y. July 10, 2006); Olivo v. Thorton, 05 Civ. 3237, 2005 WL 3292542 at *9 (S.D.N.Y. Dec. 6, 2005) (Peck, M.J.), report & rec. adopted, 2006 WL 1636742 (S.D.N.Y. June 12, 2006); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *22 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); Otero v. Eisenschmidt, 01 Civ. 2562, 2004 WL 2504382 at *18-19 (S.D.N.Y. Nov. 8, 2004) (Peck, M.J.); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *23 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005); James v. Ricks, No. 01 CV 4106, 2003 WL 21142989 at *12 & n.8 (E.D.N.Y. Mar. 6, 2003) (state decision which "found the petitioner's ineffective assistance of counsel claim was procedurally barred and without merit" rested on adequate and independent state grounds.); Campos v. Portuondo, 193 F. Supp. 2d 735, 744 n.4 (S.D.N.Y. 2002) ("The language used by the Appellate Division in Campos' case is in contrast with the language used in those cases where the state court found a claim to be 'either meritless or unpreserved.' Unlike the conjunctive 'and,' the use of the disjunctive 'or' in such cases obviously does not clarify whether the court's ruling rests on a procedural bar."), aff'd, 320 F.3d 185 (2d Cir.), cert. denied, 540 U.S. 958, 124 S. Ct. 415 (2003); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512 at *10 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) (decision that claim is unpreserved but were it to be reviewed is without merit, sufficient for procedural bar); Velasquez v. Murray, 02 Civ. 2564, 2002 WL 1788022 at *8 (S.D.N.Y. Aug. 2, 2002) (Peck, M.J.); Soto v. Greiner, 02 Civ. 2129, 2002 WL 1678641 at *12 (S.D.N.Y. July 24, 2002) (Peck, M.J.); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *9 & n.8 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Jones v. Duncan, 162 F. Supp. 2d 204, 211 (S.D.N.Y. 2001) (Peck, M.J.) ("The First Department's use of the conjunctive 'and' rather than the disjunctive 'or' clearly shows that the First Department found these claims to be unpreserved."). Martinez v. Greiner, 01 Civ. 2911, 2001 WL 910772 at *9 & n.9 (S.D.N.Y. Aug. 13, 2001) (Peck, M.J.), report & rec. adopted, 2003 WL 1936191 (S.D.N.Y. Apr. 23, 2003); Ferguson v. Walker, 00 Civ. 1356, 2001 WL 869615 at *8 & n.19 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.), report & rec. adopted, 2002 WL 31246533 (S.D.N.Y. Oct. 7, 2002); Simpson v. Portuondo, 01 Civ. 1379, 2001 WL 830946 at *10 (S.D.N.Y. July 12, 2001) (Peck, M.J.); Simmons v. Mazzuca, 00 Civ. 8174, 2001 WL 537086 at *10 (S.D.N.Y. May 21, 2001) (Peck, M.J.) (adequate and independent state ground even though First Department stated its conclusion as to merits of claims "were we to review" them); Yeung v. Artuz, 97 Civ. 3288, 2000 WL 145103 at *10 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.)

(continued...)

ground.[28]

Under New York law, "[a]s a general rule points which were not raised at trial may

not be considered for the first time on appeal." People v. Thomas, 50 N.Y.2d 467, 471, 429

N.Y.S.2d 584 (1980) (citing C.P.L. § 470.05(2)).[29] In order to preserve his prosecutorial misconduct

[27]    (...continued)
(same); Cruz v. Greiner, 98 Civ. 7939, 1999 WL 1043961 at *12-13 (S.D.N.Y. Nov. 17, 1999) (Peck, M.J.) (claims First Department held to be "unpreserved and without merit" not cognizable on habeas review); Chisolm v. Headley, 58 F. Supp. 2d 281, 287 (S.D.N.Y. 1999) (Mukasey, D.J. & Peck, M.J.); Torres v. Irvin, 33 F. Supp. 2d 257, 274 (S.D.N.Y. 1998) (Cote, D.J. & Peck, M.J.) (adequate and independent ground even though First Department "went on to dismiss the [judicial misconduct] claim on the merits"); Williams v. Bennet, 97 Civ. 1628, 1998 WL 236222 at *6 (S.D.N.Y. Apr. 20, 1998); Vera v. Hanslmaier, 928 F. Supp. 278, 285 (S.D.N.Y. 1996) (Jones, D.J. & Peck, M.J.); Liner v. Keane, 95 Civ. 2738, 1996 WL 33990 at *7 (S.D.N.Y. Jan. 3, 1996) (Wood, D.J. & Peck, M.J.).

[28]    The New York Court of Appeals denied McLean's application for leave to appeal. People v. McLean, 1 N.Y.3d 598, 776 N.Y.S.2d 230 (2004). The Supreme Court held in Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590 (1991), with respect to unexplained orders, that federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Id. at 803, 111 S. Ct. at 2594. Petitioner has presented no facts to rebut that presumption here.

[29]    C.P.L. § 470.05(2) provides, in relevant part:

For the purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered , by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is

(continued...)

claim, his uncharged evidence claim and his interference with defense counsel summation claim, McLean was required to object at the time the evidence was admitted or statement was made.  E.g., People v. Campbell, 813 N.Y.S.2d 313, 313 (2d Dep't 2006) ("The defendant's claim that the prosecutor's allegedly improper comments during summation require reversal is unpreserved for appellate review since the defendant failed to raise any objection to the comments at trial."); People v. Pettiford, 812 N.Y.S.2d 371, 371 (2d Dep't 2006) ("The defendant's contentions concerning the admission into evidence of what he claims were uncharged crimes . . . are unpreserved for appellate review, as he did not object to this evidence at trial."); People v. Ramos, 26 A.D.3d 197, 197, 808 N.Y.S.2d 897, 898 (1st Dep't) ("Defendant's challenges to the court's jury instructions are unpreserved."), appeal denied, 6 N.Y.3d 851, 816 N.Y.S. 2d 757 (2006) ; People v. Griffin, 24 A.D.3d 237, 238, 808 N.Y.S.2d 163, 163 (1st Dep't 2005) ("Defendant took no exception to the court's charge. . . . Accordingly, his present arguments are unpreserved."), appeal denied, 6 N.Y. 3d 851, 812 N.Y.S.2d 453 (2006); People v. Garcia, 23 A.D.3d 293, 294, 803 N.Y.S.2d 908, 908 (1st Dep't 2005) ("Defendant's argument that evidence of uncharged crimes was improperly admitted also is unpreserved."); People v. Jiminez, 22 A.D.3d 423, 424, 805 N.Y.S.2d 2, 3 (1st Dep't 2005) ("Also unpreserved for failure to object are defendant's claims with respect to the prosecutor's comments."); People v. O'Flaherty, 16 A.D.3d 121, 121, 789 N.Y.S.2d 890, 890 (1st Dep't) ("By failing to object,

---

29/      (...continued)

deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

or by making generalized objections, defendant did not preserve his present challenges to the prosecutor's summation."), appeal denied, 4 N.Y.3d 855, 797 N.Y.S.2d 429 (2005); see also, e.g., Olivo v. Thornton, 2005 WL 3292542 at *9 ("In order to preserve her erroneous jury charge claim for appellate review, [petitioner] was required to object at the time of the instructions.") (citing N.Y. cases); Roberts v. Batista, 01 Civ. 5264, 2003 WL 1900866 at *9 (S.D.N.Y. Apr. 16, 2003)(Peck, M.J.) ("In order to preserve his prosecutorial misconduct claim for appellate review, [petitioner] was required to object at trial to the prosecutor's statements during summation.") (citing N.Y. cases).[30]

Here, defense counsel did not object when the prosecutor brought out on direct and re-direct examination of Sgt. Nicholson that McLean had said he did not want to go "back to jail."

---

[30] A party must make a specific protest at the time of a claimed error to preserve an issue for appellate review. E.g., People v. Hardy, 4 N.Y.3d 192, 197 n.3, 791 N.Y.S.2d 513, 517 n.3 (2005). Failure to specify the grounds for a claim of error at the time of an objection (either because an objection is general, or because it specifies a different ground than that raised on appeal) renders claims not specified unpreserved for appellate review. E.g., Harris v. Woods, 2006 WL 1140888 at *35; Olivo v. Thorton, 2005 WL 3292542 at *10 ("Under New York law, a party's failure to specify the grounds for its general objection also renders its argument unpreserved for appellate review.") (citing N.Y. cases); People v. Kello, 96 N.Y.2d 740, 743-44, 723 N.Y.S.2d 111 (2001) (Claim is unpreserved where defendant "never based his trial objection to the 911 tapes on the Confrontation Clause. Rather, the only issue raised before the trial court was the erroneous admission of the tapes under our State common-law hearsay rule. . . . The defendant's failure to raise a Confrontation Clause objection precluded the trial court and prosecution from considering and, thus, avoiding any constitutional error which . . . differs from the trial evidence error which was preserved."); People v. Tonge, 93 N.Y.2d 838, 839-40, 688 N.Y.S.2d 88, 88 (1999) ("a party's failure to specify the basis for a general objection renders the argument unpreserved for [state appellate] review."); People v. Robinson, 88 N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 870 (1996) ("to frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error."); People v. Velasco, 77 N.Y.2d 469, 474, 568 N.Y.S.2d 721, 723 (1991); People v. Dien, 77 N.Y.2d 885, 886, 568 N.Y.S.2d 899, 900 (1991).

Indeed, Justice Corriero <u>sua</u> <u>sponte</u> asked defense counsel (outside the jury's presence) if she wanted a curative instruction concerning that testimony, but defense counsel declined, choosing to just "let it be." (<u>See</u> page 6 above.) Further, when the prosecutor mentioned the statement during summation, defense counsel did not object. (<u>See</u> page 9 above.)

Additionally, defense counsel did not object when the prosecutor spoke about the bravery of police officers during summation. Defense counsel only objected when the prosecutor stated that "I am not going to be doing that [police's] job, you shouldn't be expected to do that job." (<u>See</u> page 10 above.) Defense counsel did not specify her grounds for objecting nor whether she was objecting to the prosecutor injecting herself into the summation or to the prosecutor discussing the job of police officers; while McLean now argues for the latter, in context it is clear to this Court that it was the former. Finally, defense counsel did not object when the court instructed the jury on the law of a police officer's duty to arrest during the defense summation. (<u>See</u> page 8 above.)

Both the Supreme Court and the Second Circuit have held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground. <u>See</u>, <u>e.g.</u>, <u>Wainright</u> v. <u>Sykes</u>, 433 U.S. 72, 86, 90, 97 S. Ct. 2497, 2506-08 (1977) (contemporaneous objection rule is an adequate and independent state ground); <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 485-92, 497, 106 S. Ct. 2639, 2644-48, 2650 (1986) (same); <u>Franco</u> v. <u>Walsh</u>, 73 Fed. Appx. 517, 518 (2d Cir. 2003) (finding petitioner's claim of an erroneous jury charge procedurally defaulted because "[n]o contemporaneous objection to the charge was lodged, and the Appellate Division found that the issue was therefore unpreserved."); <u>Garcia</u> v.

Lewis, 188 F.3d 71, 79 (2d Cir. 1999) ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules") (citing Bossett v. Walker, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995), & Fernandez v. Leonardo, 931 F.2d 214, 216 (2d Cir.) (noting that failure to object at trial constitutes adequate procedural default under C.P.L. § 470.05(2)), cert. denied, 502 U.S. 883, 112 S. Ct. 236 (1991)); Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (failure to object constituted adequate and independent state ground), cert. denied, 520 U.S. 1108, 117 S. Ct. 1116 (1997); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (violation of New York's contemporaneous objection rule is an adequate and independent state ground).[31]

---

[31] See also, e.g., Harris v. Woods, 2006 WL1140888 at * 36; Olivo v. Thorton, 2005 WL 3292542 at *10; Yapor v. Mazzuca, 2005 WL 894918 at *23 (failure to object to jury instruction constituted adequate and independent state ground); Otero v. Eisenschmidt, 2004 WL 2504382 at *20; Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *20 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.); Figueroa v. Greiner, 2002 WL 31356512 at *11-12 ("The Second Circuit has held that the failure to object at trial when required by New York's contemporaneous objection rule, C.P.L. § 470.05, is an adequate and independent state ground."); Cooper v. LeFevre, No. 94 CV 5958, 1998 WL 386340 at *2 (E.D.N.Y. July 8, 1998) ("[T]he Second Department held that [the petitioner's claim was unpreserved because] the Petitioner violated the contemporaneous objection rule by failing to 'raise specific objections to the evidence . . . ' he cited in his appeal as having deprived him of a fair trial. . . . This Court finds that the Second Department's basis for denying Petitioner's claim was both independent of the federal question raised by such claim and adequate to support the judgment. As a result, this Court is procedurally barred from reviewing the merits of Petitioner's claim"); Jamison v. Smith, 94 Civ. 3747, 1995 WL 468279 at *2 (E.D.N.Y. July 26, 1995) ("Courts in this circuit have consistently held that the failure to object contemporaneously . . . constitutes an adequate and independent basis for barring habeas review.").

Because there is an adequate and independent finding by the First Department that McLean procedurally defaulted on his constitutional claims concerning the Janoff's trial, McLean would have to show in his habeas petition "cause for the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750, 111 S. Ct. at 2565.[32] McLean does not allege cause, prejudice or a fundamental miscarriage of justice. Thus McLean's claim is procedurally barred for habeas review. This claim thus is DENIED.[33]

---

[32]  See also, e.g., Schlup v. Delo, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995) (fundamental miscarriage of justice may be demonstrated by showing through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence").

[33]  In any event, these claims are meritless. First, it was proper for Justice Corriero to admit McLean's statement that he would not "go back to jail" to show, not criminal propensity, but intent with respect to the resisting arrest and assault charges. See, e.g., People v. Collins, 29 A.D.3d 434, 434, 815 N.Y.S.2d 80, 82 (1st Dep't 2006) ("The court's Molineux ruling . . . was an appropriate exercise of discretion as the evidence of uncharged crimes was probative of defendant's motive and intent . . . "); People v. Gilbo, 813 N.Y.S.2d 574, 575 (3d Dep't 2006) ("Admission of [uncharged crime evidence] did not violate Molineux because this evidence was relevant to establishing an element of the crime charged, defendant's intent."); see generally, e.g., Yapor v. Mazzuca, 2005 WL 894918 at *16-17 (discussing New York law on uncharged crimes evidence and explaining that such evidence relevant to intent may be admissible in the court's discretion) (citing cases). Since the statement was properly admitted, the prosecutor's comments during summation which referenced McLean's statement in the context of McLean's intent were a fair comment on the evidence.

Moreover, Justice Corriero offered a limiting instruction, but defense counsel declined, opting to let the testimony stand. See, e.g., People v. Montgomery, 293 A.D.2d 369, 371, 740 N.Y.S.2d 332, 335 (1st Dep't) ("[A]lthough a curative instruction would have sufficed to minimize any feared effect of the [witness's] answer, defendant refused the court's offer to give the jury such an instruction."), appeal denied, 98 N.Y.2d 712, 749 N.Y.S.2d 9 (2002);

(continued...)

---

33/   (...continued)

People v. Camarena, 289 A.D.2d 7, 8, 734 N.Y.S.2d 14, 16 (1st Dep't 2001) ("A curative instruction would have sufficed [to ameliorate any prejudice caused by admission of uncharged crime evidence] but defendant never accepted the court's offer to deliver such an instruction."), appeal denied, 97 N.Y.2d 752, 742 N.Y.S.2d 612 (2002)

The prosecutor's comments during summation regarding the bravery of police officers was made in response to defense counsel's argument during summation that Sgt. Nicholson was not credible and were thus proper. See, e.g., People v. Melendez, 815 N.Y.S.2d 551, 559 (1st Dep't 2006) ("The portions of the prosecutor's summation to which defendant objected as 'vouching' were responsive to the defense summations and fair comment based upon the evidence."); People v. Louisias, 29 A.D.3d 1017, 1021, 815 N.Y.S.2d 727, 731 (2d Dep't 2006) (Prosecutor's remarks on summation "were responsive to those of the defense counsel in summation and were fair comment on the evidence presented at trial."); People v. Farrell, 228 A.D.2d 693, 694, 646 N.Y.S.2d 124, 125 (1st Dep't) ("[T]he prosecutor's comments were within the bounds of fair response to the defense counsel's attack on the credibility of the police witnesses, as well as fair comment on the evidence."), appeal denied, 88 N.Y.2d 984, 649 N.Y.S.2d 691 (1996); People v. Hall, 220 A.D.2d 278, 278, 632 N.Y.S.2d 105, 106 (1st Dep't) ("The prosecutor's comment in summation, that the detective had a job to do and that she did it, did not amount to improper bolstering but rather was a fair response to an implied attack by the defense upon the integrity of the lineup conducted by the detective."), appeal denied, 87 N.Y.2d 846, 638 N.Y.S.2d 605 (1995).

Finally, Justice Corriero's instruction during defense counsel's summation was proper since defense counsel discussed the law governing the lawful duty of police officer's to arrest and it is the trial court's unique role, not the attorney's, to instruct the jury on the law. See, e.g, People v. Crispino, 298 A.D.2d 220, 221-22, 748 N.Y.S.2d 718, 720 (1st Dep't 2002) ("The court's comments during defendant's summation were appropriate to prevent the jury from being misled by defendant's comments and improper instructions on the law."), appeal denied, 99 N.Y.2d 627, 760 N.Y.S.2d 108 (2003); People v. Grey, 224 A.D.2d 318, 318, 638 N.Y.S.2d 53, 54 (1st Dep't) ("The trial court properly assumed an active role in the proceedings during the defense summation to assure clarification of the issued before the jury."), appeal denied, 88 N.Y.2d 985, 649 N.Y.S.2d 392 (1996). Justice Corriero merely reminded defense counsel not to "get[] into areas of the law" and gave a brief summary of the law on a police officer's duty to arrest, about which the judge said it would instruct the jury further in its final charge, and about which the defense counsel agreed. (See page 8 above.) Justice Corriero did not tell the jury to discount any part of defense counsel's summation nor denigrate defense counsel in front of the jury.

### III. MCLEAN WAS NOT CONVICTED OF THE QUINTANA ROBBERY AND THEREFORE HIS CLAIM REGARDING QUINTANA'S IDENTIFICATION PROVIDES NO BASIS FOR RELIEF

After previously pleading guilty to the first three counts of Indictment No. 1620/96, the Ebony McCoy robbery, McLean pled guilty to count four of Indictment No. 1620/96, charging McLean with first degree robbery of Vinnie Kakkar, in satisfaction of the balance of the indictment. (See pages 22-23 above.) McLean thus was not convicted of the Quintana robbery and his incarceration therefore is not related to those charges. Any claimed error in the identification procedures concerning the Quintana robbery charges did not contribute to McLean's conviction or sentence and cannot provide a basis for federal habeas relief.

Put slightly differently, McLean raised this issue with the First Department but conditioned it on a reversal of his trial conviction. (Dkt. No. 8: Chaffee Aff. Ex. F: McLean 1st Dep't Br. at 45 n.7: "Should this Court grant appellant a new trial . . . he seeks full relief under this Point, i.e., plea vacatur and suppression of the identification testimony. If, however, this Court declines to order a new trial, appellant does not seek to disturb his plea convictions.") As discussed in Point IV below, McLean advised this Court that if his Janoff's conviction were not overturned on habeas review, he does not seek to set aside any of his guilty plea convictions. (See 8/18/06 Conf. Tr. at 3.)

This claim therefore is DENIED.

## IV.   MCLEAN'S CLAIM THAT HIS GUILTY PLEAS WERE COERCED IS DENIED

McLean argues that his two guilty pleas under Indictment No. 1620/96 were coerced "by the courts' explicit threats that if [McLean] insisted on going to trial and was convicted, they would run the sentences consecutively to the 25 years to life sentences he was already serving under Indictment no. 1599/96."  (Dkt. No. 5: Am. Pet. ¶ 12(c).)

On his counseled direct appeal to the First Department, McLean stated that he sought "plea vacatur only in the event that this Court reverses his trial convictions . . . but refuses to vacate his plea convictions on Fuggazzatto[34] grounds.  If, however, this Court affirms [McLean's] trial convictions, he does not seek plea withdrawal." (Dkt. No. 8: Chaffee Aff. Ex. F: McLean 1st Dep't Br. at 46 n.8; see also McLean 1st Dep't Br. at 45 n.7.)[35]

Accordingly, the First Department, after affirming McLean's trial conviction concluded:

---

[34]   The New York Court of Appeals held in People v. Fuggazzatto, 62 N.Y.2d 862, 862, 477 N.Y.S.2d 619, 620 (1984), that where a defendant is induced to enter a guilty plea "by the understanding that the sentence would be concurrent with the sentence imposed for his [trial] conviction" and where the trial conviction is reversed, his guilty plea must be vacated.  Thus, pursuant to Fuggazzatto, had the First Department reversed McLean's trial conviction, it would have been required to vacate his guilty pleas.

[35]   In its response brief to the First Department, the State conceded that "[b]ecause the defendant would be entitled to vacatur of his guilty pleas in the event of a reversal on Indictment No. 1599/96, but seeks no relief with respect to those pleas upon an affirmance on Indictment No. 1599/96, the defendant's Point III [seeking vacatur of his guilty pleas because they were coerced] is moot and will not be addressed at length."  (Chaffee Aff. Ex. H: State 1st Dep't Br. at 48-49 & n.21.)

> Since defendant does not seek vacatur of either of his guilty pleas unless this Court reverses his trial conviction, and since we find no basis upon which to reverse that conviction, we do not reach defendant's arguments relating to his guilty pleas, including his arguments relating to suppression of identification testimony.

People v. McLean, 309 A.D.2d 639, 640, 765 N.Y.S.2d 626, 627 (1st Dep't 2003). The First Department's ruling on this issue was exactly what McLean had requested: that the court not review his claim surrounding his guilty pleas if it affirmed his trial conviction.

McLean's amended habeas petition raised this claim without directly indicating whether it was conditional on this Court overturning his Janoff's conviction (Am. Pet. ¶ 12(c)), but his petition also stated that support for the claim was "set forth in petitioner's appellate brief, pages 45-49" (id.), which pages included the footnote about the conditional nature of the claim. To clarify McLean's intent, the Court held a telephonic conference on August 18, 2006, at which McLean confirmed that all of his habeas claims relating to his guilty pleas were conditional on the grant of habeas relief on his Janoff's trial conviction. (8/18/06 Conf. Tr. at 3.)[36/]

Because this Court has denied McLean's Janoff's-based habeas claims, McLean's habeas claim attacking his guilty plea convictions is DENIED. See, e.g., Mapp v. Phillip, No. 04-CV-1889, 2005 WL 1541044 at *7 (E.D.N.Y. June 29, 2005).

---

[36/] McLean's position makes perfect sense. His sentences on his guilty pleas are concurrent with his Janoff's sentence. (See pages 16, 23 above.) If the Court were to grant habeas relief only as to either or both guilty plea convictions, McLean would face the risk of consecutive sentences if convicted on the McCoy or Kakkar robberies, Penal Law § 70.25(1), and Justice Corriero had stated that he intended to sentence McLean to consecutive sentences if he was convicted after trial on the McCoy or Kakkar robberies. (See Dkt. No. 14: P1. 27-28).

## V. MCLEAN'S CLAIM THAT HIS ARRAIGNMENT WAS UNCONSTITUTIONALLY DELAYED IS DENIED[37/]

McLean claims that his delayed arraignment under Indictment No. 1599/96 deprived him of his right to counsel, his right to testify before the grand jury and, as one of the "many pertinent factors bearing on the question of voluntariness" of a confession, should have caused his inculpatory statements and written confession to have been suppressed. (Dkt. No. 5: Am Pet. ¶ 12(d)(1).)

### A. McLean's Claim That His Delayed Arraignment Rendered His Statements Involuntary Is Not Cognizable Because The Statements Related Not to The Janoff's Case But The Case He Pleaded Guilty To

Federal habeas courts have considered the constitutionality of delayed arraignment of state defendants only "as part of an analysis, pursuant to the Fifth Amendment, of the voluntariness of confessions." Grimes v. Goord, 371 F. Supp. 2d 305, 317 (W.D.N.Y. 2004) (citing cases). Thus, any delay in arraigning McLean would not be a constitutional violation in itself, but rather, "a factor to be weighed in determining whether or not, viewed in the totality of the circumstances, an incriminating statement was the product of police coercion." See id.

---

[37/] McLean's claims discussed in Points V-VII were raised in state court in his pro se supplemental brief to the First Department on direct state appeal. (See Dkt. No. 8: Chaffee Aff. Ex. G: McLean Pro Se Supp. 1st Dep't Br.) The First Department "considered and rejected the claims contained in [McLean's] pro se supplemental brief." People v. McLean, 309 A.D.2d 639, 640, 765 N.Y.S.2d 626, 626 (1st Dep't 2003.) The Second Circuit has held that such language amounts to a decision on the merits requiring AEDPA deference. See, e.g., Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004) (cited on pages 34-35 above); Funches v. Walsh, 05 Civ. 2839, 2006 WL 1063287 at *11 n.18 (S.D.N.Y. Apr. 21, 2006). Thus, this Court applies AEDPA deference to these claims.

The statements McLean challenges relate not to the Janoff's charges, but to the statements he allegedly made in the police car about the Ebony McCoy robbery. (See page 13 above.) Those statements were not admitted (nor even offered) into evidence at his Janoff's trial. Since he pled guilty to the McCoy robbery and his challenge to that conviction is conditional on reversal of his Janoff's conviction (see 8/18/06 Conf. Tr. at 3), the allegedly improperly obtained statement issue is not cognizable on federal habeas review, for the reasons discussed in Point IV above.

### B.     Any Delay in Arraignment Did Not Deprive McLean of the Right to Counsel

A delay in arraignment does not give rise to a deprivation of a defendant's right to counsel. People v. Ramos, 99 N.Y.2d 27, 34, 750 N.Y.S.2d 821, 825-26 (2002) ("We have never held . . . that an undue delay in arraignment triggers a State constitutional right to counsel, i.e., one that goes beyond the requirements of the United States Constitution . . . [and] we decline to do so now."); see, e.g., Hotchkiss v. Walsh, 00 Civ. 5518, 2004 WL 2721943 at *7-8 (S.D.N.Y. Nov. 29, 2004); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *18-19 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.); Grimes v. Goord, 371 F. Supp. 2d at 318; Sease v. Goord, 01 Civ. 1378, 2003 WL 23100261 at *6-7 (S.D.N.Y. Dec. 30, 2003).

To the extent McLean may be arguing that he was deprived of the right to counsel at his lineups in connection with the charges in Indictment No. 1620/96, McLean is not pursuing claims in connection with Indictment No. 1620/96 since this Court is denying habeas relief as to his Janoff's trial conviction. (See 8/18/06 Conf. Tr. at 3.)

**C.**     **McLean's Claim That He Was Deprived Of His Right To Testify Before a Grand Jury Due To A Delay In Arraignment Does Not Provide A Basis For Habeas Relief**

McLean's claim that a delay in arraignment deprived him of his right to testify before the grand jury (in both indictments) is not cognizable on habeas review. "A jury conviction transforms any defect connected with the grand jury's charging decision into harmless error, because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *17 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing cases); accord, e.g., Dickens v. Filion, 02 Civ. 3450, 2002 WL 31477701 at *11 (S.D.N.Y. Nov. 6, 2002) (Peck, M.J.) (citing cases), report & rec. adopted, 2003 WL 1621702 (S.D.N.Y. Mar. 28, 2003); see, e.g., United States v. Mechanik, 475 U.S. 66, 67, 106 S. Ct. 938, 940 (1986) ("The petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."); Davis v. Mantello, 42 Fed. Appx. 488, 490-91 (2d Cir. 2002) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.") (citing cases), cert. denied, 538 U.S. 986, 123 S. Ct. 1803 (2003); Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court."); Folger v. Conway, No. 03-CV-0239, – – F. Supp. 2d – –, 2006 WL 2374261 at *12 (W.D.N.Y. Aug. 17, 2006) ("[T]he guilty verdict at [petitioner's] jury trial precludes habeas review

of his claim" alleging error in the grand jury proceeding.); Harrison v. Girdich, 05 Civ. 0603, 2005 WL 3465622 at *3 (S.D.N.Y. Dec. 14, 2005) ("[D]enial of the right to appear before the grand jury is not a cognizable claim on habeas review after a jury has convicted the petitioner."); Moore v. Warden, Southport Corr. Facility, 380 F. Supp. 2d 321, 328 (S.D.N.Y. 2005) ("[C]laims of deficiencies in state grand jury proceedings, where rendered harmless by a petit jury, are not cognizable in a habeas corpus proceeding in federal court."); Patterson v. Pool, 02 Civ. 5389, 2004 WL 1874967 at *4 (S.D.N.Y. Aug. 18, 2004) (Petitioner's "claim fails because errors in grand jury proceedings are deemed harmless once a petit jury returns a guilty verdict."); Palmer v. Greiner, 00 Civ. 6677, 2003 WL 22019740 at *6 (S.D.N.Y. Aug. 22, 2003); ("[F]ederal habeas courts are precluded from reviewing claims based on procedural deficiencies in state grand jury proceedings."); Marrero v. Senkowski, 01 Civ. 5867, 2003 WL 21750137 at *11 (S.D.N.Y. July 28, 2003) ("As a matter of law, any errors in a state grand jury proceeding are not cognizable on federal habeas corpus review because 'such errors are rendered harmless once a defendant has been convicted by a petit jury.'"); Bingham v. Duncan, 01 Civ. 1371, 2003 WL 21360084 at *4 (S.D.N.Y. June 12, 2003) ("[C]laims of error relating to state grand jury proceedings are not cognizable on federal habeas review, since '[t]he right to testify before a grand jury is a state statutory right, and is not of constitutional dimension.'"); Figueroa v. Donnelly, 02 Civ. 6259, 2003 WL 21146651 at *8 (S.D.N.Y. May 16, 2003) ("[I]t has been consistently held that claims of error in a state grand jury proceeding are not cognizable for federal habeas corpus review after a petit jury has convicted the petitioner. . . ."); Pena v. Fischer, 00 Civ. 5984, 2003 WL 1990331 at *8 (S.D.N.Y. Apr. 30, 2003)

(Grand jury claims are not cognizable on habeas "since claims regarding state grand jury proceedings raise no federal constitutional issues."); Cates v. Senkowski, 02 Civ. 5957, 2003 WL 1563777 at *2 (S.D.N.Y. Mar. 17, 2003) ("The right to appear before the grand jury is secured by New York State criminal law, and not by the federal Constitution.") (citation omitted).[38/]

---

[38/]    See also, e.g., James v. United States, 00 Civ. 8818, 2002 WL 1023146 at *12 (S.D.N.Y. May 20, 2002) (§ 2255 petition; "It is well established that a guilty verdict at trial remedies any defects or errors in the grand jury indictment."); Lemons v. Parrott, 01 Civ. 9366, 2002 WL 850028 at *5-6 (S.D.N.Y. May 2, 2002); Barnes v. Giambruno, 01 Civ. 8965, 2002 WL 850020 at *7 (S.D.N.Y. May 2, 2002); Burgess v. Bintz, 00 Civ. 8271, 2002 WL 727011 at *4 (S.D.N.Y. Apr. 24, 2002); McMoore v. Miller, No. 9:98CV1915, 2002 WL 975305 at *8 (N.D.N.Y. Apr. 19, 2002); Ballard v. Costello, No. 01-CV-1000, 2001 WL 1388297 at *2 (E.D.N.Y. Nov. 2, 2001); Davis v. Portuondo, 00 Civ. 8928, 2001 WL 1273801 at *6 (S.D.N.Y. Oct. 23, 2001) ("[A]n error in grand jury proceedings is necessarily rendered harmless by a trial jury's subsequent finding of guilt beyond a reasonable doubt."); Bramble v. Smith, 96 Civ. 5905, 1998 WL 395265 at *18 (S.D.N.Y. July 15, 1998) ("claims of error relating to state grand jury proceedings are not cognizable on federal collateral review."); Spulka v. Walker, 97 Civ. 1879, 1998 WL 274287 at *2 (S.D.N.Y. May 27, 1998) ("[T]he guilty verdict of the petit jury cured any defect in the grand jury proceeding."); Green v. Artuz, 990 F. Supp. 267, 273 & n.8 (S.D.N.Y. 1998) ("The right to testify before a grand jury is a state statutory right, and is not of constitutional dimension."); Velez v. People of the State of New York, 941 F. Supp. 300, 315-16 (E.D.N.Y. 1996); Mirrer v. Smyley, 703 F. Supp. 10, 11-12 (S.D.N.Y.) (Petitioner's "first claim, that the state grand jury proceeding was unlawful," alleges that the prosecutor failed to re-call him to finish testifying before the grand jury. "However, there is no federal constitutional right to a grand jury in a state criminal proceeding. The right to a grand jury is a matter of New York State law and as such is not reviewable on a petition for habeas corpus."), aff'd, 876 F.2d 890 (2d Cir.), cert. denied, 493 U.S. 850, 110 S. Ct. 148 (1989).

         Convictions upon a guilty plea similarly render any defect in the grand jury proceedings harmless. See, e.g., Brown v. Connell, 04 Civ. 10152, 2006 WL 1132053 at *6 (S.D.N.Y. Apr. 28, 2006)(The right to appear before the grand jury "involves a matter of state law and thus is not cognizable on habeas review . . . [and] [t]o the extent [petitioner] asserts other defects regarding the grand jury presentation, his guilty plea bars these claims on habeas review."), report & rec. adopted, 2006 WL 1880546 (S.D.N.Y. July 5, 2006);

(continued...)

Because McLean was convicted after a jury trial (or pled guilty), his grand jury claim is not cognizable on habeas review, and thus any delay in arraignment could not have caused a constitutional deprivation here.

Accordingly, this habeas claim is <u>DENIED</u>.

## VI.   MCLEAN'S CLAIM THAT THE LINEUP IDENTIFICATIONS AND STATEMENTS MADE SHOULD HAVE BEEN SUPPRESSED IS DENIED

McLean claims that the lineup identifications and the inculpatory statements he made should have been suppressed because he did not have counsel present.  (Dkt. No. 5: Am. Pet. ¶ 12(d)(2).)  This claim relates not to his Janoff's trial conviction but to the indictment to which he pled guilty.  As noted above, McLean is pursuing claims as to his guilty plea convictions only if his Janoff's conviction were overturned.  (8/18/06 Conf. Tr. at 3.)  Since the Court has not granted habeas relief as to McLean's Janoff's conviction, this contingent habeas claim is <u>DENIED</u>.

---

<u>38/</u>      (...continued)
<u>Smith</u> v. <u>Burge</u>, 03 Civ. 8648, 2005 WL 78583 at *7-8 (S.D.N.Y. Jan. 12, 2005) ("[I]f a habeas petitioner entered a voluntary and knowing guilty plea while represented by competent counsel, any non-jurisdictional defects, including defects with regard to grand jury proceedings, are waived."); <u>Hutchings</u> v. <u>Herbert</u>, 260 F. Supp. 2d 571, 577-78 (W.D.N.Y. 2003) (Petitioner's claim "that he is entitled to federal habeas relief because the grand jury proceeding was rendered defective because he was denied the right to testify . . . is not cognizable on federal habeas review because the right to present testimony before the grand jury is purely a matter of New York state law. . . . Moreover, [petitioner's] guilty plea cured any possible deficiency in the grand jury proceeding caused by his failure to testify there.").

## VII. MCLEAN'S CLAIM THAT HE RECEIVED INEFFECTIVE ASSISTANCE FROM HIS TRIAL COUNSEL IS DENIED

McLean contends that his counsel was ineffective because she: (1) "never gave the A.D.A. written notice" that McLean wanted to testify before the grand jury (Dkt. No 5: Am. Pet. ¶ 12(d)(3)); (2) "[i]ncorrectly argued and failed to suppress [McLean's] confession, lineup identification and other inculpatory statements" (id.); and (3) "erroneously explained the facts leading to [his] arrest" in the omnibus motion (id.).

### A. The Strickland v. Washington Standard on Ineffective Assistance of Trial Counsel [39/]

---

[39/] For additional decisions authored by this Judge discussing the Strickland v. Washington standard for ineffective assistance of counsel in language substantially similar to this section of this Report and Recommendation, see, e.g., Llanos v. Goord, 06 Civ. 0261, 2006 WL 1981749 at *14-15 (S.D.N.Y. July 14, 2006) (Peck, M.J.); Ahmed v. United States, 05 Civ. 7656, 2006 WL 328339 at *7-9 (S.D.N.Y Feb. 14, 2006) (Peck, M.J.); Pena v. United States, 2005 WL 1176073 at *4-5 (S.D.N.Y. May 18, 2005) (Peck, M.J.); Yapor v. Mazzuca, 04 Civ. 7966, 2005 WL 894918 at *23-25 (S.D.N.Y. Apr. 19, 2005) (Peck, M.J.), report & rec. adopted, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005); James v. Artus, 03 Civ. 7612, 2005 WL 859245 at *13-15 (S.D.N.Y. Apr. 15, 2005) (Peck, M.J.); Steele v. United States, 04 Civ. 6918, 02 Cr. 629, 2005 WL 704868 at *7-8 (S.D.N.Y. Mar. 29, 2005) (Peck, M.J.); Curry v. Burge, 03 Civ. 0901, 2004 WL 2601681 at *26-27 (S.D.N.Y. Nov. 17, 2004) (Peck, M.J.) (citing my prior opinions); Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504 at *22-24 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing my prior decisions); Besser v. Walsh, 02 Civ. 6775, 2003 WL 22093477 at *32-34 (S.D.N.Y. Sept. 10, 2003) (Peck, M.J.), report & rec. adopted, 2003 WL 22681429 (S.D.N.Y. Nov. 13, 2003) & 2003 WL 22846044 (S.D.N.Y. Dec. 2, 2003); Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *18-19 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (citing my prior decisions), report & rec. adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005); Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *16-19 (S.D.N.Y. May 31, 2000) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004); Fluellen v. Walker, 97 Civ. 3189, 2000 WL 684275 at *11 (S.D.N.Y. May 25, 2000) (Peck, M.J.), aff'd, 41 Fed. Appx. 497 (2d Cir. 2002), cert. denied, 538 U.S. 978, 123 S. Ct. 1787 (2003).

In <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective:  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u> at 687, 104 S. Ct. at 2064; <u>accord, e.g.,</u> <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 62-63 (2d Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 1622 (2006).   This performance is to be judged by an objective standard of reasonableness.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 688, 104 S. Ct. at 2064.[40]

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . .  [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

<u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[41]

Second, the defendant must show prejudice from counsel's performance.  <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 687, 104 S. Ct. at 2064.  The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting

---

[40]    Accord, <u>e.g.,</u> <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 521, 123 S. Ct. at 2535; <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); <u>Henry</u> v. <u>Poole,</u> 409 F.3d at 63.

[41]    Accord, <u>e.g.,</u> <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698, 122 S. Ct. at 1852; <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63; <u>Aparicio</u> v. <u>Artuz,</u> 269 F.3d 78, 95 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 315 (2d Cir. 2001).

guilt." Id. at 695, 104 S. Ct. at 2068-69.  Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.[42/]

      The Supreme Court has counseled that these principles "do not establish mechanical rules."  Strickland v. Washington, 466 U.S. at 696, 104 S. Ct. at  2069.  The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

      Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or

---

[42/]    See also, e.g., Wiggins v. Smith, 539 U.S. at 534, 123 S. Ct. at 2542; Bell v. Cone, 535 U.S. at 695, 122 S. Ct. at 1850; Henry v. Poole, 409 F.3d at 63-64; Aparicio v. Artuz, 269 F.3d at 95; Sellan v. Kuhlman, 261 F.3d at 315; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83 (1996).

"[A] reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068; accord, e.g., Wiggins v. Smith, 537 U.S. at 534, 123 S. Ct. at 2542.  The phrase "reasonable probability," despite its language, should not be confused with "probable" or "more likely than not." Strickler v. Greene, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); Nix v. Whiteside, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("a defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under Strickland"); Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").  Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility."  Strickler v. Greene, 527 U.S. at 291, 119 S. Ct. at 1953; cf. id. at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

jury.'" <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001) (quoting <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695-96, 104 S. Ct. at 2069); <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Hoke</u>, 928 F.2d 534, 538 (2d Cir. 1991).

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.[43]

In addition, the Supreme Court has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 690-91, 104 S. Ct. at 2066.[44]

---

[43]  Accord, <u>e.g.</u>, <u>Smith</u> v. <u>Robbins</u>, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

[44]  See also, <u>e.g.</u>, <u>Yarborough</u> v. <u>Gentry</u>, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); <u>Engle</u> v. <u>Isaac</u>, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); <u>Jackson</u> v. <u>Leonardo</u>, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing <u>Strickland</u> claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal.") (citations omitted); <u>Mayo</u> v. <u>Henderson</u>, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use (continued...)

As the Second Circuit noted:  "The <u>Strickland</u> standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." <u>Lindstadt</u> v. <u>Keane</u>, 239 F.3d at 199.

### 1.    **Strickland and the AEDPA Review Standard**

For purposes of this Court's AEDPA analysis, "the <u>Strickland</u> standard . . . is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95 & n.8 (quoting 28 U.S.C. § 2254(d)(1)).[45] "For AEDPA purposes, a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established.'"  <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95 n.8.  "For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland's</u> test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. . . . Rather, he must show that the [First Department] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner."  <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 698-99, 122 S. Ct. at 1852; <u>see also</u> <u>Yarborough</u> v. <u>Gentry</u>, 540 U.S. at 5, 124 S. Ct. at 4.

---

[44]    (...continued)
hindsight to second-guess [counsel's] strategy choices"), <u>cert. denied</u>, 513 U.S. 820, 115 S. Ct. 81 (1994).

[45]    <u>See also</u>, <u>e.g.</u>, <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 521-22, 123 S. Ct. 2527, 2535 (2003); <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 315.

**B.     Counsel Was Not Ineffective For Failing to Secure McLean's Appearance Before The Grand Jury**

McLean argues that his counsel failed to inform the A.D.A. that he wanted to testify before the grand jury with respect to both indictments.  Assuming, <u>arguendo,</u> that McLean's attorney failed to notify the A.D.A. of McLean's request to testify before the grand jury, McLean cannot show prejudice from such failure.  As discussed above in Point V.C.,  a conviction cures any error that occurred during grand jury proceedings.  Moreover, McLean has failed to show what he would have told the grand jury that would have prevented his indictment.  <u>See</u> <u>Lucius</u> v. <u>Filion,</u> 431 F. Supp. 2d 343, 350 (W.D.N.Y. 2006) (petitioner failed to establish prejudice as a result of appellate counsel's failure to argue that his trial counsel was ineffective for failing to raise the issue that petitioner was denied his right to testify before the grand jury where petitioner did not indicate "what he would have said to the grand jury to prevent that body from indicting him . . . . Indeed, given [petitioners'] criminal history, it would have been a sound tactical choice on trial counsel's part to recommend that [petitioner] not testify in the grand jury since doing so would expose him to cross-examination about prior bad conduct."); <u>Johnson</u> v. <u>Artuz,</u> No. 00-CV-6106, 2006 WL 1144513 at *5 (W.D.N.Y. May 1, 2006) (citing cases); <u>Brown</u> v. <u>Connell,</u> 04 Civ. 10152, 2006 WL 1132053 at *8 (S.D.N.Y. Apr. 28, 2006) (Petitioner could not establish prejudice where he "has not shown why his testimony would have made any difference to the outcome of the [grand jury] proceeding."), <u>report & rec. adopted,</u> 2006 WL 1880546 (S.D.N.Y. July 5, 2006); <u>Montalvo</u> v. <u>Annetts,</u> 02 Civ. 1056, 2003 WL 22962504 at *24-25 (S.D.N.Y. Dec. 17, 2003) (Peck, M.J.) (citing cases).

**C.** **Counsel Was Not Ineffective For Failing to Prevail on McLean's Suppression Motion**

McLean contends that trial counsel was ineffective because she "[i]ncorrectly argued and failed to suppress [McLean's] confession, lineup identification and other inculpatory statements." (Am. Pet. ¶ 12(d)(3).)

The confession and lineup identification issues go to Indictment 1620/96, i.e., his guilty pleas (see Dkt. No. 8: Chaffee Aff. Ex. G: McLean Pro Se Supp. 1st Dep't Br. at 2). McLean is not pursuing claims relating to his guilty plea convictions since the Court has denied habeas relief on his Janoff's jury conviction. (See 8/18/06 Conf. Tr. at 3.)

To the extent McLean is claiming that trial counsel was ineffective for failing to suppress McLean's Janoff's statement that he would not go back to jail, there in fact was a suppression hearing, after which Justice Corriero found the police testimony credible and held that McLean's statements were "spontaneous." (See Dkt. No. 15: Tr. 5; see also Dkt. No. 8: Chaffee Aff. Ex. H: State 1st Dep't Br. at 5-15, describing suppression hearing testimony.) Defense counsel also cross-examined Sgt. Nicholson at trial about statements that he attributed to McLean at trial but were neither in his memo book nor in his grand jury testimony. (See page 7 above.) McLean has not explained how counsel was ineffective in this regard. The claim is DENIED.

**D.** **McLean's Claim About Counsel's Factual Error In the Omnibus Motion Only Goes To Indictment 1620/96**

McLean contends that trial counsel's erroneous recitation of the facts surrounding his arrest in the omnibus motion amounted to ineffective assistance of counsel. (Am. Pet. ¶ 12(d)(3).)

The Omnibus Motion was filed with respect to Indictment 1620/96. (See Dkt. No.

8: Chaffee Aff. Ex. C: Omnibus Motion, clearly captioned "Indictment No. 1620/96.") That indictment relates to his guilty pleas and, as previously discussed, since the Court is denying McLean relief on his Janoff's trial conviction, McLean is not pursuing his claims as to his guilty plea convictions. (See 8/18/06 Conf. Tr. at 3.) The claim therefore is DENIED.

## CONCLUSION

For the reasons discussed above, McLean's habeas petition is DENIED. A certificate of appealability is not issued.

SO ORDERED.

Dated:     New York, New York
           August 21, 2006

                                        _____
                                        **Andrew J. Peck**
                                        United States Magistrate Judge

Copies to:   Dennis McLean
             Chelsea Chaffee, Esq.